[No. 20004.  Department One.  July 16, 1926.]

TOM KOSTIDA, *Respondent,* v. THE DEPARTMENT OF
LABOR AND INDUSTRIES, *Appellant.*[1]

[1] MASTER AND SERVANT (121-2)—REMEDIES UNDER WORKMEN'S
COMPENSATION—APPEAL—NOTICE—SUFFICIENCY.  The time ffor
taking an appeal from the disallowance of a workman's claim
for permanent partial disability begins to run from the date
of the notice of rejection; and not from an earlier date of an
order granting compensation for loss of time and denying par-
tial disability, before the disability had occurred and before
the case was reopened on the subsequent claim therefor.

[2] SAME (121-2)—PERMANENT PARTIAL DISABILITY—LOSS OF TES-
TICLE.  The loss by a workman of the left testicle is a permanent
partial disability, entitling him to compensation under Rem.
Comp. Stat., § 7230, defining the same as the loss of one foot,
one "  .  .  .  or any other injury known in surgery to be
permanent partial disability"; although the medical experts did
not all agree that it was a partial permanent disability to
perform manual labor.

Appeal from a judgment of the superior court for
King county, Griffiths, J., entered December 2, 1925,
upon findings in favor of the plaintiff, reversing, on
appeal, the refusal of the department of labor and in-
dustries to award compensation for permanent in-
juries.  Affirmed.

*The Attorney General* and *M. H. Wight, Assistant,*
for appellant.

*G. F. Vanderveer* and *S. B. Bassett,* for respondent.

ASKREN, J.—Respondent, while employed as a miner,
received an injury which required an operation for the
removal of a portion of the scrotum and later the re-
moval of the left testicle.  The department of labor and
industries made an allowance for time lost by reason
of the injury, but refused an allowance for loss of the

[1]Reported in 247 Pac. 1014.

testicle. An appeal was taken to the superior court, where the action of the department was reversed, and the cause remanded with instructions to determine the amount of the loss, and make an award therefor. The department appeals.

The first ground of appeal is, that the court had no jurisdiction to determine the matter by reason of the failure to take an appeal within the time provided by statute. It appears from the record that on March 18, 1925, the department sent to respondent a notice of final settlement, which awarded time lost from November 13, 1924, to March 16, 1925, in the sum of $123, and under the form heading for compensation for permanent partial disability was entered the notation "None."

At that time, the respondent had made no claim for loss on account of any partial permanent disability by reason of the loss of the testicle. The removal of the testicle occurred in February, 1925, and the department had not received notice thereof, although it was advised of the removal of a portion of the scrotum at an earlier period. Immediately upon receipt of the notice of final settlement, the doctor who removed the testicle wrote the department advising them that it had been removed and requesting the reopening of the case. The case was thereupon reopened and respondent examined by Dr. Taylor at the request of the department, who advised that the testicle had been removed and that there was evidence of a recent operation therefor. On April 15, the department advised respondent's attorney that it did not consider that the loss of a testicle constituted a permanent partial disability within the meaning of the compensation act, in that it did not lessen his earning capacity, and denied any compensation therefor. Within twenty days thereafter notice of

appeal was given, construing the letter of April 15th as an order denying the claim.

[1] The department claims that the twenty days, within which an appeal must be taken as provided by § 7697, Rem. Comp. Stat. [P. C. § 3488], must be computed from the date of March 18, at which time the letter was sent to respondent making allowance for time lost, and denying any recovery for permanent partial disability.

Respondent, on the other hand, contends that the twenty days should begin with the letter of the department of April 15, rejecting any allowance for permanent partial disability.

We think it fairly established by the record that, at the time the letter of March 18 was written to respondent, he had not yet notified the department of the removal of the testicle, and that the department did not know thereof; that immediate notice was sent to the department, and thereupon it reopened the case by having respondent examined by Doctor Taylor at the suggestion and request of the department. Respondent also took the matter up with the department through his attorney. During this time, it is quite apparent that respondent had the right to believe, and the department was leading him to believe, that it was determining the question of the loss of the testicle, and its consequent effect as a permanent partial disability. The department did not advise respondent or his counsel, that it did not consider the loss of the testicle as a permanent partial disability, until this letter of April 15. Appeal was taken within twenty days thereafter and, we think, complies with the statute.

The department contends that the record indicates a knowledge upon its part of the removal of the testicle before March 18. This is based upon a report of an employee of the department, not a physician, which

said that the testicle had been removed. The only inference from the record is that this is based upon a letter from the doctor who removed the scrotum, but who referred to it in medical terms and followed with the statement, "and the offending member was removed." That this is the only reasonable interpretation thereof is made manifest by the fact that there is no other evidence to indicate that the department had knowledge of the removal of the testicle, and that, as soon as the doctor who performed the operation notified the department, it referred respondent to its doctor for examination to determine this fact.

[2] The second error assigned is that the court erred in holding that the loss of the testicle is a permanent partial disability within the meaning of the workmen's compensation act, § 7679, Rem. Comp. Stat. [P. C. § 7230]. This section is as follows:

"Permanent partial disability means the loss of either one foot, one leg, one hand, one arm, one eye, one or more fingers, one or more toes, any dislocation where ligaments are severed where repair is not complete, *or any other injury known in surgery to be permanent partial disability.*"

The italicized words are those necessary to be construed in determining whether respondent's injury is such as to justify an allowance of compensation. There can be no question but what respondent has suffered a permanent loss of one of the members of his body, but the more important question raised here is, whether that loss is an "injury known in surgery to be a permanent partial disability." The medical experts did not at all agree upon the answer to this question. Six eminent physicians testified upon the point—five for appellant and one for respondent. All seemed to be agreed upon the proposition that the injury did not create a permanent partial disability, so far as ability

to perform manual labor is concerned. The basis of their opinion was stated to be that, upon the loss of one testicle, the other one, if normal, proceeds to secrete a much larger amount of fluid than formerly, and performs the duties formerly devolving upon both, although respondent's witness testified that it was impossible to say that one organ will fully compensate in its functioning for the loss of the other. It was testified that the loss of one testicle does not affect procreation nor, to a determinative degree, the internal functioning of the body, and that the result is much the same as in the loss of a kidney or any gland of the body whose purpose is to secrete fluids for bodily function. From these facts the witnesses for appellant concluded that there was no permanent partial disability.

It may be that in the loss of a testicle the other one will double its work, and attempt, so far as lies within its power, to perform the labor of the one that is lost, to the end that the human body may suffer no impairment. It may even be assumed that medical science has demonstrated to its own satisfaction that no actual loss does result, although to those outside the sacred precincts of that very able profession there must be a doubt as to the completeness and definiteness of the demonstration. But there is still another vital consideration in such a case as this.

Either nature, in the creation of man, determined that the needs of the body could not be met with one testicle, or else two were supplied to furnish a reserve power in case of accident or disability to one. If we admit that the theory of a reserve power is to be the only ground upon which the presence of two of these organs can be accounted for, still it does not seem to us that such a loss should remain uncompensated for. The theory of the compensation act was to prevent industry from exacting a toll from the laborer which, un-

compensated, tends to make him a charge upon society. Respondent may not continue in any employment that brings him under the provisions of the act, and, should the other testicle be destroyed, there is no question about the permanent partial disability. But, had the industry in which he lost the first organ not taken its toll from him, the later injury would still leave him able to perform his functions as before. It surely cannot be contended that industry can cause a loss of a kidney, a testicle, and other like useful organs of the body, and then turn the employee out upon society with every reserve power destroyed, and yet refuse compensation because he still has left one-half of the members with which nature endowed him. One has a right to remain in possession of all those useful members of his body which are provided by nature, and to insist that, if he has two of any kind, upon the loss of one of them he shall not be denied compensation because both were not taken.

Much of the observation made by the court in the case of *Hercules Powder Co. v. Morris County Court of Common Pleas,* 93 N. J. L. 93, 107 Atl. 433, is applicable here. In that case a workman had lost a testicle and the workmen's compensation act provided for payment for injury, "where the usefulness of the member is permanently impaired," and "where any physical function is permanently impaired." The court said:

"Whatever view medical experts may entertain upon that phase of the case, the indisputable fact remains that the injured defendant has suffered the loss of a portion of his anatomy, which nature implanted in the human organism, as a dual reservoir of complete efficiency equally with the eyes, ears, and limbs, and that to deprive him of one of these natural attributes is to take from him a component portion of the perfect genus homo, and to that extent at least impair the physical attributes of his manhood. This impairment may not

prove to be so conspicuous in the ability to produce wages, in the industrial world, but there are other spheres for the employment of human energy, talents, and the possession of physical attributes besides the industrial world into the activity of which the defendant is entitled to bring, possess, and enjoy all the physical attributes with which nature endowed him.

"In harmony with these considerations, it has been held that the sole criterion of a disability, partial in character and permanent in quality, under the statute, is not limited to the loss of earning power. *De Zeng Co. v. Pressey,* 86 N. J. Law, 469, 92 Atl. 278, affirmed in 96 Atl. 1102; *Burbage v. Lee,* 87 N. J. Law, 36, 93 Atl. 859.

"In the recent selective draft, for military service, no little attention was paid to the physical imperfections, which might be deemed to lessen human stamina and individual staying power. Nor can it be denied that in any computation of contest based upon considerations of the physically perfect specimens of the race, the defendant would be at a disadvantage."

The judgment is affirmed.

TOLMAN, C. J., HOLCOMB, BRIDGES, and FULLERTON, JJ., concur.