No. 15,341.

ROBINSON *v.* INDUSTRIAL COMMISSION ET AL.

(144 P. [2d] 979)

Decided January 10, 1944.

Mr. O. OTTO MOORE, Mr. HARRY C. GREEN, for plaintiff in error.

Mr. DARWIN D. COIT, Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. ST. GEORGE GORDON, Assistant, for defendants in error.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THIS is a workmen's compensation case, in which plaintiff in error, as claimant, filed a claim for compensation with the Industrial Commission against the Albany Hotel and Royal Indemnity Company for compensation benefits for an injury sustained by reason of an accident

arising out of and in the course of his employment, which injury, he alleged, resulted in sterility of the right testicle. The referee and the commission found that claimant "sustained no permanent partial disability as a result of this injury," but that he did suffer temporary total disability, and ordered payment of compensation therefor. The district court affirmed· and approved the final award of the commission, and claimant brings the case here for a review of that judgment.

The only issue of law involved is, Whether claimant is entitled to compensation for permanent partial disability, admittedly dependent here upon proof of sterility.

The pertinent facts of the case are as follows:

On February 19, 1939, while claimant, a man sixty years of age, was lifting a tub of ice at the Albany Hotel in the City of Denver, he "slipped and fell hurting back." Liability was admitted by the employer and its insurance carrier and claimant was paid $30.85 covering three weeks and three days compensation — March 2, 1939 to March 26, 1939 — he returning to work on the latter date. June 19, 1939, he filed a petition to reopen claim with the Industrial Commission based upon a written report dated June 19, 1939, from his own physician, Dr. Snyder, stating he had found a "mass in the right scrotum." The insurance carrier, however, denied "any and all claims for permanent disability." Hearing was set for November 20, 1939, and continued from time to time to January 3, 1940, at which hearings the physicians testifying recommended an operation to remove this mass. The commission thereupon ordered an operation and the claimant consented thereto. The operation was performed February 1, 1940, by Dr. Snyder, and claimant was discharged by him on April 9, 1940, the doctor testifying that at that time claimant had no permanent disability.

In compliance with a petition filed by claimant, a further hearing was held April 29th to further consider his

injuries and the results of the operation and to determine "termination of temporary disability and degree of permanent disability." Dr. Snyder testified at this hearing that he operated on claimant for removal of a "tumor of the epididymis" (elongated mass at the back of the testicle); that claimant had a normal procedure of recovery; that the operation had been successful and that his entire disability should now be removed; that the operation would have no effect upon claimant's sterility; that he knew of no reason why claimant should not return to work; that in his opinion claimant had no permanent disability and that he could work as well as any other man of his age.

At a later hearing on June 10, 1940, Dr. Packard testified that he knew nothing "about any accident to any part of his body," but that he "found no permanent disability in regard to his groin and right testis"; that he had examined claimant July 10, 1939; that claimant had a small soft tumor attached to the right testicle which he considered to be a hydrocele of the cord; that he examined claimant May 6, 1940; that claimant no longer had the tumor, but that he had "some thickening of the cord, just above the testis, which is characteristic of any portion of the body that has been operated on"; that "you could tell by the fact that the testicle is not dead, that the cord must be still functioning in its normal way"; that he examined claimant again on May 14, 1940, following the operation; that he "saw no indication for any surgery at the present time but I believe that Mr. Robinson [claimant] is able to do ordinary work as far as this condition is concerned and that he has no permanent disability."

Based upon this testimony, the referee of the commission entered a supplemental order on June 12, 1940, finding that claimant had sustained no permanent partial disability.

Claimant then filed a petition for review with the commission on June 18, 1940, claiming particularly that

he "continues to suffer great pain, and has been unable to work, due to said injury and subsequent operation and sterilization, which he has been informed has resulted, and by removal of said cord, and even of part of the testicle, and therefore, desires that the referee and the commission be apprised of the complete facts."

A hearing was held August 19, 1940, the case having been reopened by the commission, and re-referred for the purpose of hearing the testimony of two additional physicians who had been consulted by claimant and who had examined him. They were Doctors Dorsey and Grossman. Both of them testified that claimant was suffering from pain caused by a post-operative condition resulting in a disability up to 30 per cent; however, both agreed that with further operative treatment he would be freed from pain, would be normal in every way and have no permanent disability. Dr. Dorsey suggested "the removal of the right testicle and spermatic cord along with all the scar tissue," and stated that following such an operation there would be no permanent disability, saying: "I don't believe at his age that the removal of his testicle will have any effect on his working ability."

The testimony taken at this hearing was transcribed and considered with the "entire file" by the commission, which, on September 10, 1940, specifically found that claimant had "sustained no permanent partial disability, as a result of this injury," and ordered payment of compensation to claimant for temporary total disability, as we have stated before; that "the respondents pay for the necessary medical, surgical and hospital expense incurred within four months and not to exceed $500.00."

An application for review of this award was filed by claimant September 24, 1940, which is simply an iteration of the matters previously before the commission. October 2, 1940, the commission announced a supplemental award in which it stated that the award of September 10th "is hereby affirmed and approved as the

final award of this commission," and which, as above indicated, was affirmed in due course by the district court.

The theory of counsel for claimant seems to be that because the testimony of Doctors Dorsey and Grossman was given at the latest hearing, i.e., on August 19th, and that because they were specialists in urology, that their testimony constitutes "the manifest weight of the evidence," and that, therefore, the commission was bound to find, as a matter of law, that there was permanent partial disability under section 357, chapter 97, '35 C.S.A. It is disclosed by the record that Dr. Packard's last examination of claimant was on May 14th; Grossman's examination took place on May 14th; Dr. Winemiller's—another physician upon whose testimony claimant relies, and who advised against further operation—on May 22, 1940, and Dr. Dorsey's on July 22, 1940. These examinations coming so close together indicate nothing more than disagreement concerning a present condition, and the commission was justified in considering all the reports together; consequently on the issue involved, viz., permanent partial disability, it clearly appearing that the medical testimony was in direct conflict, under the established rule in this jurisdiction, we are not at liberty to disturb the judgment affirming the award.

The cases relied upon by claimant's counsel, namely, *Kostida v. Department of Labor and Industries*, 139 Wash. 629, 247 Pac. 1014; *Morris v. Muldoon*, 180 N.Y.S. 319; *Smith v. Baker*, 157 Okla. 155, 11 P. (2d) 132, might be helpful if sterility or loss of function of the testicle had actually been established, but under the factual situation presented, they are not applicable.

We have not overlooked the motion of defendants in error to dismiss, included in their answer brief, but in view of the disposition above, it is unnecessary to consider it.

Judgment affirmed.