[No. 69687-0. En Banc.]
Argued January 30, 2001. Decided July 12, 2001.

ROBERT I. MCINDOE, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Petitioner*.

EDWARD K. KRABBENHOFT, ET AL., *Respondents*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Petitioner*.

*Christine O. Gregoire, Attorney General*, and *John R. Wasberg, Assistant*, for petitioner.

*Tom G. Cordell*; and *Michael J. Pontarolo* (of *Delay, Curran, Thompson, Pontarolo & Walker, P.S.*), for respondents.

MADSEN, J. — In these consolidated cases, the Department of Labor and Industries seeks review of a Court of Appeals decision ordering payment of permanent partial disability benefits plus attorney fees and costs for occupationally-induced hearing losses sustained by the workers. The Department contends that such an award constitutes double recovery because the workers filed their claims after they had been awarded permanent total disability pensions. We affirm on the basis that the hearing losses were sustained before the unrelated injuries that resulted in the pensions and the claims were filed within the statute of limitations.

## FACTS

The undisputed facts to which the parties have stipulated are as follows:

Robert I. McIndoe: Mr. Robert McIndoe worked for many years in the construction industry as a heavy equipment operator. Toward the end of his career, he noticed a decline in his hearing. On February 9, 1994, Mr. McIndoe suffered a severe injury to his back in an industrial accident. On February 14, 1994, Mr. McIndoe filed a claim for benefits for the back injury. An otolaryngologist examined Mr. McIndoe on June 10, 1996, and diagnosed him with 19.5 percent binaural hearing loss caused by occupational noise exposure. He sought benefits for his hearing loss, filing an occupational disease claim form dated June 19. The Department of Labor and Industries received the claim on July 5, 1996. On June 24, 1996, the Department determined that,

as a result of the back injury, Mr. McIndoe was permanently totally disabled and awarded Mr. McIndoe a pension effective August 20, 1996. The Department reduced the monthly pension amount by the amount previously paid as a permanent partial disability benefit for the same injury. Mr. McIndoe's hearing loss claim was granted only for medical treatment, and on September 27, 1996, this claim was closed without an award of permanent partial disability benefits because a pension had already been awarded based on the back injury.

Edward K. Krabbenhoft: Mr. Krabbenhoft worked for many years for Lehigh Portland Cement Company and its successor, Lefarge Cement Corporation. He sustained an industrial injury on December 21, 1989, which eventually required surgery and resulted in the award of a permanent total disability pension on October 8, 1993. Mr. Krabbenhoft had known since 1989 that he had a hearing deficit, but learned from his physician on November 11, 1996, following an audiogram and physical examination, that he had an occupationally caused 29 percent binaural hearing loss and he could file a claim for benefits. The Department paid for medical treatment only and on May 9, 1997, closed the claim without awarding permanent partial disability benefits.

John J. Herrera: Mr. Herrera also worked for the Lehigh Portland Cement Company for 16 years. On October 13, 1987, he injured his knee in an industrial accident and on November 16, 1993, received a permanent total disability pension. On July 1, 1996, Mr. Herrera filed a claim for 39 percent binaural hearing loss which developed during his employment with Lehigh Portland Cement Company. The Department allowed the claim on November 7, 1997, for medical treatment but did not make a permanent partial disability award.

In each case the worker appealed and the Department upheld its denials of permanent partial disability benefits for the hearing losses. In each case, an Industrial Appeals Judge reversed, ordering the award of permanent partial

disability benefits to the workers. The Board of Industrial Appeals (Board) reversed. Mr. McIndoe appealed the Board decision to the Adams County Superior Court which granted summary judgment to the Department. Mr. McIndoe appealed. Mr. Krabbenhoft and Mr. Herrera appealed the Board's decision in a consolidated case. The Pend Oreille Superior Court granted summary judgment in their favor and the Department appealed. The Court of Appeals consolidated Mr. McIndoe's case with the Krabbenhoft and Herrera cases, reversing the trial court in Mr. McIndoe's case and affirming in the Krabbenhoft and Herrera cases. *McIndoe v. Dep't of Labor & Indus.*, 100 Wn. App. 64, 995 P.2d 616 (2000). The court held that the Department must pay permanent partial disability benefits plus reasonable attorney fees and costs to each of the workers. *Id.* at 71-72. The Department was granted review in this Court.

## ANALYSIS

The question presented here is whether a worker who is classified permanently totally disabled and placed on pension may thereafter receive a permanent partial disability award for an unrelated occupational disease which developed prior to the pension award. To resolve this case we are required to apply provisions of Title 51 RCW, the Industrial Insurance Act (IIA) and case law interpreting those provisions.

In this state, injured workers' rights to benefits are statutory. Washington's workers' compensation law was enacted in 1911, the result of a compromise between employers and workers such that "sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy." RCW 51.04.010. Workers receive less than full tort damages but are spared the expense and uncertainty of litigation. *See Dennis v. Dep't of Labor & Indus.*, 109 Wn.2d 467, 469-70, 745 P.2d 1295 (1987). The Industrial Insurance Act man-

dates that its provisions be "liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment." RCW 51.12.010. Courts, therefore, are to resolve doubts as to the meaning of the IIA in favor of the injured worker. *Kilpatrick v. Dep't of Labor & Indus.*, 125 Wn.2d 222, 230, 883 P.2d 1370, 915 P.2d 519 (1994).

Under the IIA, when a worker is injured so severely that he or she is unable to work, the worker can be classified as permanently totally disabled. Permanent total disability is statutorily defined as the "loss of both legs, or arms, or one leg and one arm, total loss of eyesight, paralysis or other condition permanently incapacitating the worker from performing any work at any gainful occupation." RCW 51-.08.160. This definition combines categories of per se total disability (presumed to render a worker unable to work) with the general standard for determining permanent total disability—actual inability to perform or obtain work. *Leeper v. Dep't of Labor & Indus.*, 123 Wn.2d 803, 811, 872 P.2d 507 (1994). Compensation for permanent total disability is paid as a monthly pension (or a lump sum) based on a percentage of the worker's wages. RCW 51.32.060.

The IIA was amended in 1917 to include a schedule of specifically listed permanent partial disabilities. *See Corak v. Dep't of Labor & Indus.*, 2 Wn. App. 792, 794 n.4, 469 P.2d 957 (1970). Permanent partial disability is defined as the "loss of either one foot, one leg, one hand, one arm, one eye, one or more fingers, one or more toes, . . . or any other injury known in surgery to be permanent partial disability." RCW 51.08.150. Hearing loss is a specified scheduled partial disability for which "the injured worker shall receive compensation" in an amount fixed by law. RCW 51-.32.080(1).

Pursuant to RCW 51.32.060(4), a worker who receives a permanent partial disability award before being classified permanently and totally disabled based on an unrelated

occupational injury or disease is entitled to a full pension, "notwithstanding the payment of a lump sum for his . . . prior injury." RCW 51.32.060(4); *see Clauson v. Dep't of Labor & Indus.*, 130 Wn.2d 580, 586, 925 P.2d 624 (1996). The Department concedes that had the sequence of these workers' claims been reversed, the workers would have been entitled to an award of permanent partial disability for their hearing losses.

Nevertheless, the Department argues that *Harrington v. Department of Labor & Industries*, 9 Wn.2d 1, 8, 113 P.2d 518 (1941) and its progeny preclude a permanent partial disability award in this case because the claims for such awards were made following permanent total disability awards. The Department reasons that once a worker has been awarded a permanent total disability pension, he or she cannot receive further workers' compensation benefits. *See Harrington*, 9 Wn.2d at 8; *Sorenson v. Dep't of Labor & Indus.*, 19 Wn.2d 571, 143 P.2d 844 (1943); *Peterson v. Dep't of Labor & Indus.*, 22 Wn.2d 647, 157 P.2d 298 (1945). This is so, the Department argues, because the worker "has already received all the benefits that may be allowed for permanent and total disability." *Harrington*, 9 Wn.2d at 8.

In *Harrington*, the worker was a logger who was permanently and totally disabled because of an industrial accident. He received a lump-sum payment instead of a monthly pension. Although the classification of permanent total disability is defined as being unable to work, Harrington recovered sufficiently to return to logging work and was injured again. Thereafter, he filed a claim for time loss, hospital and medical bills, and compensation for any permanent disability which might have been sustained. Other than medical treatment, the Department ruled that Mr. Harrington was not entitled to further compensation.

The issue presented in *Harrington* was whether a worker may receive time loss compensation, i.e., compensation for temporary total disability, for an injury suffered after he has been classified permanent total disability and received a lump-sum settlement. This Court agreed with the Depart-

ment that Harrington was ineligible for time loss compensation stating that "[a] subsequent lesser disability cannot be superimposed upon the maximum disability recognized by the law. A contrary conclusion would result in an overlapping of classifications and in the allowance of double payment." *Harrington*, 9 Wn.2d at 8. The Court reasoned that had Mr. Harrington been receiving a monthly payment, the Department could have reclassified him as partially or fully recovered, even to the point of terminating the monthly payments but, having received a lump sum, that option was unavailable. *Id.* at 6. In a factually similar case two years later, the Court rejected another worker's claim based on the *Harrington* rule. *Sorenson*, 19 Wn.2d at 577-78.

In *Peterson*, the worker appealed his classification as permanent total disability. Although he had suffered a severe permanent total disability, he was still working. Under the *Harrington* rule he believed that, once classified as permanently totally disabled and pensioned, he would be ineligible for compensation for future injuries he might suffer. *Peterson*, 22 Wn.2d at 651. Mr. Peterson preferred to be classified as permanently partially disabled because he could then apply for benefits if he suffered any further industrial injuries. The issue presented in *Peterson* was whether an employee may challenge his classification as permanently totally disabled. The Court held that Mr. Peterson was entitled to appeal the classification.

*Harrington* does not support the Department's position in these cases. The worker in *Harrington* was seeking time loss compensation, i.e., compensation for temporary total disability, for an injury suffered after he had been classified permanently totally disabled and received a lump-sum settlement. Time loss compensation is the same classification of benefits as total disability. *Hubbard v. Dep't of Labor & Indus.*, 140 Wn.2d 35, 992 P.2d 1002 (2000); *Herr v. Dep't of Labor & Indus.*, 74 Wn. App. 632, 875 P.2d 11 (1994). Accordingly, allowing time loss compensation subsequent to a permanent total disability classification "would result in

an overlapping of classifications and in the allowance of double payment." *Harrington*, 9 Wn.2d at 8. In contrast the workers here are seeking permanent partial disability awards for an occupational disease occurring before their pension awards.

The *Harrington* line of cases merely illustrate that a worker may not collect workers' compensation benefits for industrial injuries sustained after being classified as permanently and totally disabled because the classification presumes that the worker is unable to work.[1] Thus, decisions disallowing benefits for subsequent injuries are inapposite in the cases before us now. *See Clauson*, 130 Wn.2d at 585-86.

■■ The Department also maintains that any payment following the award of a permanent total disability pension constitutes double recovery because both permanent partial disability and permanent total disability benefits compensate for presumed loss of wage-earning ability and the permanent total disability pension already fully compensates a worker for wage loss caused by occupational disability. The purpose of the Act, the Department argues, is to compensate workers for loss of earning ability *as measured by* loss of bodily function. *See Harrington*, 9 Wn.2d at 7 ("Although the amounts to be allowed in specific instances are fixed by statute, the awards are nevertheless predicated upon a commensurate loss of earning power."). The Department urges that the statutorily prescribed dollar amounts for permanent partial disabilities represent the method chosen by the Legislature to take into account presumed loss of wage earning capacity, with the trier of fact determining the extent of permanent partial disability by deter-

---

[1] In a case that clearly involved fraud by a worker who was receiving a permanent total disability pension and was subsequently injured after returning to work in the same industry under an alias, the Court of Appeals reversed the Department's retroactive removal of the worker from the pension rolls and demand for a refund absent objective medical findings of a diminution of the worker's physical disability. *Moser v. Dep't of Labor & Indus.*, 35 Wn. App. 204, 209, 665 P.2d 926 (1983). That case does not aid in resolving the question posed by this case because the worker withdrew his request for disability benefits. *Id.* at 205.

mining the loss of bodily function. *See Fochtman v. Dep't of Labor & Indus.*, 7 Wn. App. 286, 293-94, 499 P.2d 255 (1972). Thus, the Department argues loss of bodily function is merely the measure of the level of monetary compensation for presumed loss of wage earning capacity. The workers respond that the Legislature intended permanent partial disability payments to compensate for loss of bodily function only.

We find both considerations are reflected in the statutory scheme. The fact that the Legislature took a presumed possible loss of earning power into consideration in order to arrive at dollar amounts to be paid for certain specified disabilities, however, does not lead to the conclusion that the only purpose of the statutes is to compensate for lost wages. To the contrary, the establishment by the Legislature of "a specific cash award for specific amputations and losses of faculties . . . was necessary if the legislative plan of compensation in accordance with loss of bodily function (as distinguished from partial loss of earning power) was to be accomplished." *Page v. Dep't of Labor & Indus.*, 52 Wn.2d 706, 712, 328 P.2d 663 (1958); *see* WAC 296-20-01002 ("Permanent partial disability: . . . Under Washington law disability awards are based solely on physical or mental impairment due to the accepted injury or conditions without consideration of economic factors"); RCW 51.08.150. An injury may have no effect at all on the worker's wage earning capacity, yet the injury is fully compensable. *See Kostida v. Dep't of Labor & Indus.*, 139 Wash. 629, 634, 247 P. 1014 (1926) (loss of one testicle had no effect on worker's ability to perform manual labor; claim for a permanent partial disability award allowed because "[o]ne has a right to remain in possession of all those useful members of his body which are provided by nature").

In fact, it is error to consider loss of earning power in fixing an award for permanent partial disability. *Cayce v. Dep't of Labor & Indus.*, 2 Wn. App. 315, 317, 467 P.2d 879 (1970). This is so because "permanent total and permanent partial disability are not different levels on the same

continuum, but are two separate concepts." *Ellis v. Dep't of Labor & Indus.*, 88 Wn.2d 844, 851, 567 P.2d 224 (1977). Permanent total disability classification means it has been determined that the worker's condition is permanent and prevents the worker from returning to gainful employment. Permanent partial disability benefits, on the other hand, are awarded on the basis of loss of bodily function. *Page*, 52 Wn.2d at 711. A worker's earning power does not determine the amount of the permanent partial disability award because two individuals who have the same loss of function are entitled to the same permanent partial disability award. WAC 296-20-200(4). While the loss of a finger, for example, might have little disabling effect on a stevedore, it would be devastating to the earning ability of a pianist. *Fochtman*, 7 Wn. App. at 294. Thus, a permanent partial disability award is not specifically tied to wage earning ability.

The Department, however, relies heavily upon statements in *Davis v. Bendix Corp.*, 82 Wn. App. 267, 917 P.2d 586 (1996). The issue in *Davis* was whether Mr. Davis' claim for time loss benefits for later aggravation of the same injury would relate back to the period before the permanent partial disability award. The court held that time-loss benefits for loss of earning power could be paid only for the period after the closure of the permanent partial disability claim. *Davis*, 82 Wn. App. at 273. The court stated that "permanent partial disability compensates the claimant for future lost earning capacity measured by a percentage of loss of bodily function." *Id.* at 274. This statement, upon which the Department relies, is true when the claims are for the *same injury*. It is not true, however, when, as in this case, the permanent partial disability claim is for a prior, unrelated injury. *See Clauson*, 130 Wn.2d at 582.

A claim for time loss compensation is inconsistent with a claim for permanent partial disability because once a worker has been classified as permanently partially disabled, he or she receives a lump-sum payment and is not entitled to time-loss compensation unless further treat-

ment is needed and the worker is reclassified as temporarily totally disabled. *Franks v. Dep't of Labor & Indus.*, 35 Wn.2d 763, 767, 215 P.2d 416 (1950). RCW 51.32.090. Mr. Davis was entitled to compensation during the aggravation period under the temporary total disability statute because his physical condition was no longer fixed and stable. RCW 51.32.090. In order for his time loss benefits to relate back to before the permanent partial disability award for the same injury, he would have had to have his case reopened and reclassified back to the date of the original injury, otherwise, a double recovery would result. That does not mean, however, that the permanent partial disability award compensated him for future lost earning capacity rather than loss of bodily function. To the extent that the statements in *Davis* could be read as meaning that permanent partial disability payments in addition to permanent total disability payments would constitute double recovery because both compensate for lost earning capacity, it is disapproved.

The Department argues, however, that if permanent partial disability payments are considered compensation for loss of bodily function, it would lead to the highly anomalous result that every totally disabled worker could also claim full permanent partial disability benefits for that functional loss. This is not the case. Payment made for permanent partial disability is deducted from amounts otherwise payable for permanent total disability unless the partially disabling condition is *unrelated* to the totally disabling injury. Thus, if an injury that was originally classified as partially disabling is later determined to cause permanent total disability, earlier payments are recouped by adjusting the pension. RCW 51.32.080(4). However, RCW 51.32.060(4) specifically allows full payment of permanent partial disability claims for injuries occurring prior to, and unrelated to, the permanent total disability pension claim.

Should any further accident result in the permanent total disability of an injured worker, he or she shall receive the

pension to which he or she would be entitled, notwithstanding the payment of a lump sum for his or her prior injury.

RCW 51.32.060(4).

The Department's reasoning that both permanent partial disability and permanent total disability benefits are compensation for wage loss does not accord with RCW 51-.32.060(4), because RCW 51.32.060(4) allows the receipt of both types of benefits. To accept the Department's argument, we would have to ignore RCW 51.32.060(4).

Finally, the Department maintains that our decision in *Clauson v. Department of Labor & Industries*, 130 Wn.2d 580, 581-82, 925 P.2d 624 (1996) does not apply to these workers. In *Clauson*, this Court held that a worker may receive an award for a pending permanent partial disability claim in addition to a permanent total disability pension. The Department argues that the workers in this case do not qualify for the narrow exception of *Clauson* because the claims for their hearing losses were not filed and open when their permanent total disability pensions were awarded.

In *Clauson*, a worker suffered two industrial injuries, one in 1974 and one in 1983. The first claim was closed in 1980 with a permanent partial disability award of 35 percent of the amputation value of the right leg. The injury from the second accident necessitated surgery. Mr. Clauson was classified as temporarily totally disabled and received time loss benefits until August 16, 1989, when he began receiving a full permanent total disability pension. In 1987, however, the first claim was reopened for surgical intervention. When he saw his doctor on August 23, 1989, Mr. Clauson's condition had stabilized and it was determined that he was now left with 60 percent permanent partial disability of the right leg. The Department closed the claim without awarding permanent partial disability benefits for the first injury because the Department had awarded Mr. Clauson a permanent total disability pension for the second injury. *Clauson*, 130 Wn.2d at 583. This Court held that Mr. Clauson should be awarded benefits for both claims because his earlier claim was open and pending with the Depart-

ment and the worker should not be disadvantaged by the timing of the closure of claims. *Id.* at 582.

The Department here argues that although the workers' hearing losses were sustained prior to their totally disabling injuries, their claims were neither "open" nor "pending" because they did not file their claims for occupationally-induced hearing loss until after their permanent total disability claims were closed. In addition, the timing of the closure of claims was not within the Department's control because the permanent partial disability claims had not even been filed when the permanent total disability pensions were awarded.

Just as Mr. Clauson's permanent partial disability claim was still open because his condition was not determined to be fixed and stable until he was examined by his physician, the workers in this case could not file their permanent partial disability claims until their physicians diagnosed their hearing loss and determined that they had an occupational disease. Precluding the filing of these claims would disadvantage workers who later learn of the effects of their hazardous employment. In these cases, the timing of claims is a function of the nature of some occupational diseases, thus the sequencing of filing of claims should not deprive the workers of their rights to benefits.

As in *Clauson*, the workers in this case had valid, preexisting, compensable claims for occupational disease suffered before their totally disabling injuries. And, like Clauson, the workers here were dependent upon their physicians' reports. Although the Department was not aware that the workers were going to file claims, neither were the workers aware that they had valid, compensable claims until they had notice from their physicians of the existence of an occupational disease.

A worker has two years from the date of receiving written notice from a physician that the occupational disease is causally related to work and that a claim for disability benefits may be filed. RCW 51.28.055. All three workers filed their hearing loss claims once they were informed by a

physician that they had occupationally-caused hearing losses. Their claims were filed within the statute of limitations governing occupational disease.[2]

 Based on the holding of *Clauson*, the principle that provisions of the IIA be liberally construed in favor of injured workers, and that workers should not be penalized for the sequencing of the filing of claims, we hold that a worker may receive permanent partial disability benefits for a valid occupational injury or disease claim that preexisted and is unrelated to the worker's permanent total disability condition if the permanent partial disability claim is filed within the statute of limitations. Accordingly, we affirm the result reached by the Court of Appeals.

The workers are also entitled to reasonable attorney fees and costs on appeal under RCW 51.52.130.

ALEXANDER, C.J., and SMITH, JOHNSON, SANDERS, IRELAND, BRIDGE, CHAMBERS, and OWENS, JJ., concur.

---

[No. 66693-8. En Banc.]
Argued March 27, 2001. Decided July 19, 2001.

---

[2] Mr. McIndoe also filed his claim for permanent partial disability benefits within weeks of the closure of the total disability claims. Thus, Mr. McIndoe had begun the process of opening his permanent partial disability claim by seeking diagnosis and treatment even before notice of the closure of his permanent total disability claim was sent to him.