IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JOSE L. BIRRUETA, | ) | No. 32210-6-III |
| Respondent, | ) ) ) | |
| v. | ) ) | |
| DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON | ) ) ) ) | PUBLISHED OPINION |
| Appellant. | ) ) | |

SIDDOWAY, C.J. — The superior court in this case held that the Department of

Labor and Industries was without authority to assess Jose Birrueta for an overpayment of

time-loss benefits and to change his marital status for compensation purposes under RCW

51.32.240. This was because Mr. Birrueta's marital status had been determined in a 2008

notice of decision by the department that had become final under RCW 51.52.050. In so

holding, the trial court implicitly rejected at least two decisions by the Board of Industrial

Insurance Appeals that construed the current version of RCW 51.32.240 as providing

authority for recovering overpayments following a final order. The department appeals.

The construction of RCW 51.32.240 urged by the department fails to read the

statute as a whole and fails in particular to consider language added by the legislature in

1999 and 2004. The board decisions on which the department relies also fail to address that critical language and reflect no specialized analysis to which we should accord deference. We agree with the trial court's reading of the statute and affirm.

## FACTS AND PROCEDURAL BACKGROUND

The material facts are not in dispute. In August 2004, Jose Luis Birrueta suffered a back injury when he fell from a ladder at work. He was taken to Our Lady of Lourdes Hospital, where someone completed patient information for him on a Department of Labor and Industries claim form evidently made available to the hospital.[1] The attending emergency room physician completed the medical section on the same day, indicating that Mr. Birrueta suffered a strain and would miss two days of work as a result. The patient information section indicated that at the time of the injury, Mr. Birrueta was married, that his spouse's name was Graciela, and that he had one child, Araceli.

In fact, Mr. Birrueta was not married at the time he was injured. But he thereafter

---

[1] The form, which was addressed to the Department of Labor and Industries' Insurance Services Division in Olympia, included the following "Instructions" at the top:

> MEDICAL PERSONNEL (NOTE: MEDICAL COMPLETION INSTRUCTION ON PAGE 2) Give the last page of this form to the patient *before* you complete your section. After you complete the medical section, send page 1 to the address listed to the left. Keep page 2 and send the remainder to the patient's employer.

Board Record, Ex. 1.

2

received time-loss benefits calculated as if he was, resulting in larger payments than he would have received as a single individual. Mr. Birrueta would later testify by declaration that he does not read or write in English; that the patient information included on the claim form was not his handwriting; that the form bears his signature but he doesn't recall signing it; that when he was taken to the emergency room he was unconscious much of the time; and that during transport by ambulance to the hospital he recalls being asked whether he had family in the area and responding that he had a sister, Graciela, who had a daughter, Araceli. At the time of his injury, Mr. Birrueta was living in the same house with Graciela and Araceli.

In September 2008, the department issued a notice of decision announcing its determination of Mr. Birrueta's wage for compensation purposes. The notice of decision stated that the department treated his marital status eligibility as "married with 0 children." Board Record, Ex. 2. It disclosed the following additional determinations on which the wage was based:

> The wage for the job of injury is based on reported income for the twelve-month period from 01/01/2003 to 12/31/2003 of $14,577.48 equaling $1,214.79 per month.
>
> Additional wage for the job of injury include:
>
> Health care benefits          NONE per month
> Housing/Board/Fuel          NONE per month
>
> Worker's total gross wage is $1,214.79 per month.

*Id.*

3

At the bottom of the notice was prominent text stating, "This order becomes final 60 days from the date it is communicated to you unless you do one of the following: file a written request for reconsideration with the Department or file a written appeal with the Board of Industrial Insurance Appeals." *Id.* Although Mr. Birrueta initially protested the order, he eventually dismissed his appeal.

After a number of time-loss payments to Mr. Birrueta, the department found him to be totally and permanently disabled in January 2011 and ordered him placed on a pension. In that connection, he completed a pension benefits questionnaire that asked among other matters about his marital status at the time of injury. He answered that he had been single.

In light of this corrected information, the department issued an order assessing an overpayment of $100.86 for time-loss benefits paid between the time it received the pension questionnaire and the day before Mr. Birrueta was placed on pension, treating the time-loss benefits as having been overpaid due to an innocent misrepresentation as to marital status. In June 2011, the department issued an order changing Mr. Birrueta's marital status for compensation purposes from married to single, effective as of the time it received the pension questionnaire, again because of the innocent misrepresentation.

Mr. Birrueta appealed both orders to the Board of Industrial Insurance Appeals, arguing that the department lacked authority to assess an overpayment and to change his marital status because its September 2008 wage order was final and binding. An

4

industrial appeals judge granted a department motion for summary judgment and affirmed both orders. Mr. Birrueta's petition for review was denied by the board, which adopted the industrial appeal judge's proposed decision as its final decision and order.

Mr. Birrueta appealed to the Franklin County Superior Court. Following trial, the court ruled that RCW 51.32.240 does not authorize the department to assess payments that are made pursuant to final adjudications as asserted overpayments, and the wage rate order establishing Mr. Birrueta's marital status was final. In its findings of fact and conclusions of law, the court adopted several of the board's findings but reversed its decision, concluding that the department lacked authority to issue the assessment and marital status change orders. The department appeals.

## ANALYSIS

### *Plain Language Analysis*

RCW 51.32.240 provides in part that

[w]henever any payment of benefits under this title is made because of clerical error, mistake of identity, innocent misrepresentation by or on behalf of the recipient thereof mistakenly acted upon, or any other circumstance of a similar nature, all not induced by willful misrepresentation, the recipient thereof shall repay it.

RCW 51.32.240(1)(a). Under this "innocent error provision" (a term we sometimes use as shorthand in referring to subparagraph (1)(a) hereafter), the department is allowed to recoup the overpayment from future payments. The provision limits the time within which the department may make claim for repayment to one year.

5

Elsewhere, however, the statute provides that "[e]xcept as provided in subsections (3), (4), and (5) of [RCW 51.32.240], the department may only assess an overpayment of benefits because of adjudicator error when the order upon which the overpayment is based is not yet final as provided in RCW 51.52.050 and 51.52.060." RCW 51.32.240(1)(b). Subsection (3) of the statute deals with a recipient's obligation to repay temporary disability benefits if the department later rejects his or her claim. Subsection (4) deals with a recipient's obligation to repay benefits that are paid pursuant to a department, board, or lower court determination that is reversed by a final decision on appeal. Subsection (5) deals with a recipient's obligation to repay benefits that have been induced by a recipient's "willful misrepresentation." Notably, the statute does not say "except as provided in subsections (1)(a), (3), (4), and (5) . . . the department may only assess an overpayment . . . when the order upon which the overpayment is based is not yet final."

The department's position is that unlike subsections (3), (4), and (5) of RCW 51.32.240, the innocent error provision does not need to be excluded from the operation of subparagraph (1)(b) because the innocent errors it describes and "adjudicator error" are mutually exclusive. How to construe an overpayment "because of adjudicator error" proves to be at the heart of the parties' dispute. Because the department contends that innocent error addressed by subparagraph (1)(a) and adjudicator error are mutually exclusive concepts, it argues that the department may always collect overpayments

6

attributable to innocent error but may never collect overpayments attributable to adjudicator error. For his part, Mr. Birrueta contends that "adjudicator error" means any adjudication that squarely encompasses and resolves the matter at issue and is now contended to be wrong for any reason. While the department's position has some surface appeal, it cannot withstand critical or historical analysis.

Chapter 51.52 RCW deals with industrial insurance appeals and "provides finality to decisions of the Department." *Kingery v. Dep't of Labor & Indus.*, 132 Wn.2d 162, 169, 937 P.2d 565 (1997). RCW 51.52.050(1) states that all department orders "shall become final within sixty days from the date the order is communicated to the parties unless a written request for reconsideration is filed with the department . . . or an appeal is filed with the board of industrial insurance appeals." Thus, "[o]nce the 60-day appeal period expires and the order becomes final, it cannot be appealed." *Leuluaialii v. Dep't of Labor & Indus.*, 169 Wn. App. 672, 678, 279 P.3d 515 (2012) (citing *Shafer v. Dep't of Labor & Indus.*, 166 Wn.2d 710, 717, 213 P.3d 591 (2009)). RCW 51.52.050(1) makes no reference to RCW 51.32.240.

As a limitation on setting aside final orders, "adjudicator error" is broadly defined by RCW 51.32.240; it "*includes* the failure to consider information in the claim file, failure to secure adequate information, or an error in judgment." RCW 51.32.240(2)(b) (emphasis added). In construing a statute, the word "includes" is a term of enlargement. *Brown v. Scott Paper Worldwide Co.*, 143 Wn.2d 349, 359, 20 P.3d 921 (2001).

7

Elsewhere, the statute uses the parallel term "erroneous adjudication" in a context that

clearly means erroneous for any reason:

> Whenever any payment of benefits under this title has been made pursuant
> to an adjudication by the department or by order of the board or any court
> and timely appeal therefrom has been made where the final decision is that
> any such payment was made pursuant to an *erroneous adjudication,* the
> recipient thereof shall repay it.

RCW 51.32.240(4) (emphasis added). And by explicitly providing that the department

can assess overpayments under subsection (5) following a final order, RCW

51.32.240(1)(b) treats a decision induced by a recipient's willful misrepresentation of

facts as adjudicator error. If a decision induced by a recipient's willful representation is

adjudicator error, then how can a decision induced by a recipient's innocent

representation not be?

Because the same words used in the same statute should be interpreted alike,

"includes" is a term of enlargement, and the common meaning of "adjudicator error" is

any error by an adjudicator, "adjudicator error" is reasonably construed to include an

adjudicator's clerical error, his or her mistake of identity, or his or her reliance on an

innocent misrepresentation. There is no basis for the department's treatment of the

concepts of adjudicator error and subsection (1)(a)'s categories of innocent error as

mutually exclusive. As a result, RCW 51.32.240(1)(b) plainly provides that apart from

temporary benefits advanced on a claim that is later denied, benefits paid pursuant to an

order reversed on appeal, or benefits induced by a willful misrepresentation, "the

8

department may only assess an overpayment of benefits because of adjudicator error"—even innocent error—"when the order upon which the overpayment is based is not yet final as provided in RCW 51.52.050 and 51.52.060."

*Legislative History*

Legislative history further supports this plain reading of the statute.

In 1994, the Washington Supreme Court decided *Marley v. Department of Labor and Industries*, 125 Wn.2d 533, 886 P.2d 189, a seminal decision on the finality of the department's orders. The department had issued an order that Beverly Marley was not eligible for payments as a beneficiary following her husband's death, based on her admission that while her husband had been paid child support up to the time of his death, he and she had lived separately for over 10 years. *Id.* at 535. She did not appeal the agency's order, which therefore became final after 60 days. *Id.* at 536. She challenged it six years later on the grounds that it contained an error of law as to her eligibility.

As of 1994, RCW 51.32.240 was similar to its present form in providing for repayment to the department of benefits overpaid because of clerical error, mistake of identity, or innocent mistake; temporary benefits advanced on a claim that was later denied; and benefits paid pursuant to an order reversed on appeal. It was unlike the present statute in that benefits were required to be repaid if overpayment was induced by "fraud" and it made no mention of finality or adjudicator error. Most importantly for the issues in *Marley*, it included no provision under which a recipient could recover benefits

9

that had been _under_paid. Former RCW 51.32.240(1)-(4) (1991). Rather than rely on the statute, then, Ms. Marley relied on this court's decision in *Fairley v. Department of Labor and Industries*, 29 Wn. App. 477, 481, 627 P.2d 961 (1981), which held that a department's order misconstruing the Industrial Insurance Act, Title 51 RCW, was void and did not require that an appeal be taken.

*Marley* overruled *Fairley*, holding that "[a]n order from the Department is void only when the Department lacks personal or subject matter jurisdiction." *Marley*, 125 Wn.2d at 542. It explained that

> [e]ven assuming Mrs. Marley's argument has merit, she has only proved
> that the Department made an error, not that it ruled without jurisdiction.
> Whether right or wrong, the Department clearly had the authority to decide
> whether Mrs. Marley was living in a state of abandonment [as defined
> under the Act].

*Id.* at 543 (footnote omitted).

It was in response to the decision in *Marley* that legislators proposed the adoption of what became current subsection (2) of RCW 51.32.240 in 1999. As originally proposed, House Bill 1894 would have simply modified former RCW 51.32.240(1) to include underpayments as well as overpayments by providing, e.g., "Whenever any payment of benefits under this title is . . . withheld because of clerical error . . . the recipient thereof shall be entitled to benefits underpaid, or shall repay. . . ." H.B. 1894, at 1, 56th Leg., Reg. Sess. (Wash. 1999). The House Bill Analysis described the disparity under then-current law between the department's right to recover overpayments and a

10

beneficiary's burden to timely appeal an underpayment, mentioned *Marley*, and

summarized the proposed legislation as follows:

> If industrial insurance benefits are withheld because of clerical error,
> mistaken identity, innocent misrepresentation, or other similar
> circumstances, the recipient is entitled to the benefits underpaid. The claim
> for these benefits must be made within one year of the underpayment or it
> is deemed waived.

H.B. ANALYSIS ON H.B. 1894, at 2, 56th Leg., Reg. Sess. (Wash. 1999). In its originally

proposed form, the bill made no exception for adjudicator error.

The House Committee on Commerce & Labor took action on the bill on February

24 and 25, 1999. At the committee meeting on February 24, Douglas Connell, the

assistant director of insurance services for the department, appeared and explained that

based on the department's concerns with the way the bill was then written, the

department had prepared and had circulated, that morning, a revised version, to "define

some of the terms that we're dealing with" and "put some parameters around it." Hr'g on

H.B. 1894 Before the H. Commerce and Labor Comm., 56th Leg., Reg. Sess. (Feb. 24,

1999) at 5 min., 37 sec. through 5 min., 50 sec., *available at*

http://www.digitalarchives.wa.gov. He described the objective as being "so it is clear as

to when the overpayment or underpayments can take place." Hr'g on H.B. 1894, *supra*,

at 6 min. 12 sec. through 6 min., 18 sec. While Mr. Connell's explanation of the changes

was extremely general, he provided the following answer to a question posed by

Representative Conway:

> Q. Being around these worker comp benefits . . . time-loss
> benefits, and . . . I would assume this also would . . . Does this apply to the
> PPD awards as well? Is that . . .
> A. The proposal that we have would apply only to the payment
> of temporary total disability or time-loss . . .
> Q. Time-loss benefits.

Hr'g on H.B. 1894, *supra*, at 7 min., 22 sec. through 7 min., 46 sec.

The department's concerns appear to have been addressed by amendments introducing the "adjudicator error" limitation. As amended, what became Engrossed House Bill 1894 added a new section to the statute to address underpayments rather than incorporate provision for them in RCW 51.32.240(1). The new section largely paralleled RCW 51.32.240(1)'s provision for recovering overpayments but also included the following unique limitation now codified at RCW 51.32.240(2)(b):

> The recipient may not seek an adjustment of benefits because of adjudicator
> error. "Adjudicator error" includes the failure to consider information in
> the claim file, failure to secure adequate information, or an error in
> judgment.

ENGROSSED H.B. 1894, at 2, 56th Leg., Reg. Sess. (Wash. 1999).

The limitation likely reflected the department's concern that the new section could open the door to an onslaught of requests for increased benefits from recipients alleging that some staff member, witness, or information provider once made a clerical error, mistake of identity, or innocent misrepresentation. The "adjudicator error" limitation placed an important limit on reopening department determinations.

Finally, amendments to RCW 51.32.240 in 2004 added clarity to the relationship between adjudicator error and finality. Several amendments to the Industrial Insurance Act were made by Engrossed Substitute House Bill 3188, passed by the legislature in 2004. The two principal amendments to the overpayment and underpayment provisions of RCW 51.32.240 were to allow the department to recover overpayments induced by a recipient's willful misrepresentation rather than fraud, and to increase parity between the department's right to recover overpayments and a worker's right to recover underpayments. It did so by adding a limitation for adjudicator error to the department's rights under RCW 51.32.240(1).

Perhaps because it would make subsection (1) quite long, and perhaps to parallel subsection (2), the amendment to subsection (1) was broken into subparagraphs for the first time, including the adjudicator error limitation in new subparagraph (b). Contrary to the department's argument that subparagraphs (1)(a) and (1)(b) address different matters and that (1)(b)'s general limitation of overpayment recovery to nonfinal orders does not apply to (1)(a), the legislature's House Bill Report on Engrossed Substitute House Bill 3188 recognizes no distinction and characterizes the limitation to nonfinal orders as applying to innocent error. The House Bill Report's summary of the bill described the adjudicator error changes as follows:

> *If benefits are overpaid because of adjudicator error, the Department may only assess an overpayment when the order on which the overpayment is based is not yet final, unless the overpayment relates to an order rejecting*

13

> *the claim, results from a final appeal of a Department or Board of*
> *Industrial Appeals order, or has been induced by willful misrepresentation.*
> If benefits fail to be paid because of adjudicator error, the claimant must
> address the adjustment by filing a written request for reconsideration or an
> appeal within the statutory sixty-day appeal period.

H.B. REP. ON ENGROSSED SUBSTITUTE H.B. 3188, at 4, 58th Leg., Reg. Sess., (Wash.

2004) (emphasis added).

This legislative history, like the plain language of RCW 51.32.240, demonstrates

the legislature's intent that only nonfinal orders are subject to a claim that benefits were

underpaid or overpaid as a result of clerical errors, mistake of identity, or innocent

misrepresentation.

### Board Decisions

We finally turn to decisions of the Board of Industrial Insurance Appeals brought

to our attention by the parties, at least two of which conflict with our construction of the

statute. This court will accord "deference to an agency interpretation of the law where

the agency has specialized expertise in dealing with such issues." *City of Redmond v.*

*Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 136 Wn.2d 38, 46, 959 P.2d 1091 (1998);

*Doty v. Town of S. Prairie*, 155 Wn.2d 527, 537, 120 P.3d 941 (2005) (a board's

interpretation of the Industrial Insurance Act is not binding on this court, but "is entitled

to great deference") (quoting *Weyerhaeuser Co. v. Tri*, 117 Wn.2d 128, 138, 814 P.2d

629 (1991)). Nonetheless, this court is "not bound by an agency's interpretation of a

statute." *Redmond*, 136 Wn.2d at 46. "The Department's interpretation of the [Industrial

Insurance Act] is subject to de novo review." *Shafer v. Dep't of Labor & Indus.*, 166 Wn.2d at 715.

The board reached the opposite conclusion to our own in both *In re Veliz*, No. 11 20348, 2013 WL 3185978 (Wash. Bd. Indus. Ins. Appeals Mar. 4, 2013) and *In re Johnson*, No. 12 15248, 2013 WL 3636375 (Wash. Bd. Indus. Ins. Appeals April 11, 2013). The facts in both cases were materially identical to those presented here. In both cases, the department issued orders establishing the workers' compensation rate based on the workers' representations that they were married at the time of their injury. Upon later learning that the information about their marital status at the time of injury was incorrect, the department in both cases issued orders changing the workers' status to single for wage calculation purposes. Despite earlier entered wage determination orders that had become final, the board held in both cases that the department had authority under RCW 51.32.240(1) to change a worker's marital status that had been based on an innocent misrepresentation.[2]

In *Veliz*, the board stated that "[o]nce [a] misrepresentation has been established,

---

[2] One member of the board filed a dissent in *Veliz*. He disagreed that the department could use RCW 51.32.240 to avoid the res judicata effect of its wage order in light of the Washington Supreme Court's rulings in *Marley v. Dep't of Labor & Indus.*, 125 Wn.2d 533 and *Kingery*, 132 Wn.2d 162 (plurality opinion). *Veliz*, 2013 WL 3185978, at *4.

15

RCW 51.32.240(1) provides relief from the res judicata application of an otherwise final determination and allows the Department to recoup benefits that had been overpaid." *Veliz*, 2013 WL 3185978, at *2. That would be true if subsection (1) was all that the statute had to say on the subject. But RCW 51.32.240(2) limits the department's right of recoupment to overpayments made under nonfinal orders, except as provided by RCW 51.32.240(3), (4), and (5). *Veliz* fails to address that limitation.

In *Johnson*, the board cited an earlier *Johnson* decision, *In re Teresa M. Johnson*, No. 853229, 1987 WL 61380 (Wash. Bd. Indus. Ins. Appeals Aug. 26, 1987), for its reasoning that "the overpayment statute would be rendered meaningless if the principle of res judicata prevented the Department from correcting an inaccurate rate of compensation after sixty days had elapsed." *Lloyd D. Johnson*, 2013 WL 3636375, at *2. But in *Teresa M. Johnson*, the department had not yet adjudicated Ms. Johnson's wage rate at the time it sought to recover overpayments, it had simply paid time-loss compensation on an unexplained basis that it later determined to be inaccurate. Unlike the order in this case, which laid out the basis on which the department would calculate Mr. Birrueta's wage for compensation purposes, a mere payment order does not adjudicate the basis of the wage rate. In *Somsak v. Criton Technologies/Heath Tecna, Inc.*, 113 Wn. App. 84, 92, 52 P.3d 43 (2002), this court held that an unappealed department order is res judicata "as to the issues encompassed within the terms of the order, absent fraud." It held that

the factual basis for a wage rate is not encompassed within the terms of a payment order that does not disclose that factual basis.[3]

We agree that if the department could not recover overpayments made under nonfinal orders that did not adjudicate facts a recipient was required to appeal, then RCW 51.32.240(1) *would* be rendered meaningless. But because it is only final orders adjudicating the claimed error that are excluded from the right to recoup overpayments, subsection (1) is not rendered meaningless at all. The board's decision in *In re Anita Bordua*, No. 93 1851, 1994 WL 364993 (Wash. Bd. Indus. Ins. Appeals May 2, 1994) is also distinguishable as involving a nonfinal order that was legitimately subject to recoupment for overpayment.

While the board has expertise in dealing with workmen's compensation matters, its decisions in *Veliz* and *Lloyd D. Johnson* are not entitled to deference where they fail to consider RCW 51.32.240 in its entirety and fail to make a distinction between final orders adjudicating a matter, on the one hand, and nonfinal orders or orders that do not adjudicate that matter, on the other.

---

[3] Notably, while rejecting Ms. Johnson's appeal because her wage rate had not been adjudicated by a final order, the board's decision observed, "Had the issue of the basis of the time-loss compensation rate been squarely before the Department in any of the orders issued prior to August 1985, there might have been some merit to Ms. Johnson's contention." *Johnson*, 1987 WL 61380, at *2.

17

*Attorney Fees*

Mr. Birrueta requests attorney fees and costs under RAP 18.1 and RCW

51.52.130. RAP 18.1 permits recovery of reasonable attorney fees or expenses on review

if applicable law grants that right. RCW 51.52.130 provides, in relevant part:

> If, on appeal to the superior or appellate court from the decision and order
> of the board . . . a party other than the worker or beneficiary is the
> appealing party and the worker's or beneficiary's right to relief is sustained,
> a reasonable fee for the services of the worker's or beneficiary's attorney
> shall be fixed by the court.

Since the department was the appealing party and Mr. Birrueta's right to relief is

sustained, his request for attorney fees is granted, subject to compliance with RAP

18.1(d).

Affirmed.

Siddoway, C.J.

WE CONCUR:

Korsmo, J.

Lawrence-Berrey, J.

18