# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MICHAEL L. SIMS,<br><br>               Appellant,<br><br>v.<br><br>DEPARTMENT OF LABOR AND<br>INDUSTRIES OF THE STATE OF<br>WASHINGTON,<br><br>               Respondent. | No. 47604-5-II<br><br><br>PUBLISHED OPINION |

MAXA, J. – Michael Sims appeals a superior court order affirming a Board of Industrial Insurance Appeals (Board) ruling denying permanent partial disability benefits. The Board ruled that Sims was unable to receive a permanent *partial* disability award for his March 2012 industrial injury because that injury occurred after the September 2010 effective date of a permanent *total* disability determination relating to a 2003 injury. Sims argues that the Board and the superior court erred because the Department of Labor & Industries (DLI) did not enter its decision regarding his permanent total disability until after his March 2012 injury.

A worker who has a permanent *partial* disability (PPD) because of an industrial injury receives a one-time award of benefits based on his or her loss of function. RCW 51.32.080. A worker who has a permanent *total* disability (PTD) receives a certain percentage of his or her wages as a monthly pension. RCW 51.32.060. Under settled Washington law, an injured worker who has been classified as being permanently and totally disabled and subsequently is injured

again cannot receive a PPD award for the second injury. *E.g.*, *Harrington v. Dep't of Labor & Indus.*, 9 Wn.2d 1, 7-8, 113 P.2d 518 (1941). However, a worker who suffers one injury and later is classified as being permanently and totally disabled because of another injury can receive a PPD award for the first injury. *McIndoe v. Dep't of Labor & Indus.*, 144 Wn.2d 252, 266, 25 P.3d 903 (2001).

Sims argues that under *McIndoe* he is entitled to a PPD award for the March 2012 injury because that injury occurred before DLI entered the decision that he was permanently and totally disabled. DLI argues that Sims is not entitled to a PPD award for the March 2012 injury because that injury occurred after the September 24, 2010 effective date of his permanent and total disability.

We agree with DLI. We hold that Sims is not entitled to a PPD award for the March 2012 injury because that injury occurred after the effective date of his PTD, as determined by the Board and DLI. Accordingly, we affirm the superior court's order.

FACTS

In 2003, Sims injured his left arm at work. He filed a workers' compensation claim, which DLI allowed. DLI provided Sims with time-loss benefits until October 2009.

In April 2010, DLI closed Sims's claim and determined that Sims was permanently and partially disabled because of the 2003 injury. After Sims protested, DLI affirmed its disability determination in a decision dated September 24, 2010. Sims appealed to the Board, claiming that he was permanently and totally disabled rather than partially disabled because of the 2003 injury.

While this appeal was pending before the Board, Sims was injured at work in March 2012. Sims filed another workers' compensation claim. DLI allowed the claim and determined that Sims was entitled to receive medical treatment and other benefits under this claim.

In August 2012, the Board reversed DLI's decision on Sims's appeal for the 2003 injury. The Board found that Sims was "unable to perform or obtain gainful employment on a reasonably continuous basis . . . as of September 24, 2010." Clerk's Papers (CP) at 76. The Board concluded that Sims "was a permanently totally disabled worker within the meaning of RCW 51.08.160, as of September 24, 2010." CP at 76. Finally, the Board remanded the matter to DLI to determine that Sims was totally and permanently disabled.

In September 2012, DLI issued a notice of decision correcting and superseding its September 24, 2010 order. The decision stated, "This worker is totally and permanently disabled and is placed on pension effective 9/24/2010." CP at 80.

In February 2013, DLI closed Sims's claim for the March 2012 injury without a PPD award. Sims protested the decision. DLI affirmed its decision and issued a letter stating that Sims was not entitled to a PPD award for the March 2012 injury because he was pensioned in 2010.

Sims appealed to the Board. Sims filed a motion for summary judgment and DLI filed a cross motion for summary judgment. An industrial appeals judge (IAJ) issued a proposed decision and order granting summary judgment to DLI. The proposed decision and order ruled that Sims was not entitled to consideration of a PPD award for his March 2012 injury because he was permanently and totally disabled as of September 2010.

Sims filed a petition for review of the proposed decision and order with the Board. The Board considered and denied the petition, adopting the IAJ's proposed decision and order as the Board's decision and order.

Sims appealed the Board's order to the superior court. The superior court affirmed the Board's order adopting the IAJ's proposed decision and order.

Sims appeals.

ANALYSIS

A.    STANDARD OF REVIEW

Under the Industrial Insurance Act (IIA), the superior court's review of a Board order is de novo and based solely on the evidence and testimony presented to the Board. *Butson v. Dep't of Labor & Indus.*, 189 Wn. App. 288, 295, 354 P.3d 924 (2015); RCW 51.52.115. In the superior court, the Board's decision is prima facie correct and the party challenging the Board's decision must support its challenge by a preponderance of the evidence. *Butson*, 189 Wn. App. at 296; RCW 51.52.115.

In an industrial insurance case, we review the superior court's decision, not the Board's decision. *Butson*, 189 Wn. App. at 296; RCW 51.52.140. DLI is charged with administering the IIA, so we afford substantial weight to its interpretation of the act when the subject area falls within the agency's area of expertise. *Birrueta v. Dep't of Labor & Indus.*, 188 Wn. App. 831, 844, 355 P.3d 320 (2015), *review granted*, 184 Wn.2d 1033 (2016). However, we are not bound by DLI's interpretation. *Id.*

The superior court held that the Board correctly granted summary judgment to DLI. We review summary judgment orders de novo. *Rickman v. Premera Blue Cross*, 184 Wn.2d 300, 311, 358 P.3d 1153 (2015). Summary judgment is appropriate if there are no genuine issues of

4

material fact and the moving party is entitled to judgment as a matter of law. *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013); CR 56(c).

B.     PERMANENT DISABILITY UNDER THE IIA

The right to workers' compensation benefits is statutory, and we look to the provisions of the IIA to determine whether a particular worker is entitled to compensation. *Clauson v. Dep't of Labor & Indus.*, 130 Wn.2d 580, 584, 925 P.2d 624 (1996). When construing the IIA, we must liberally construe the act "for the purpose of reducing to a minimum the suffering and economic loss arising from injuries . . . occurring in the course of employment." RCW 51.12.010; s*ee also Harry v. Buse Timber & Sales, Inc.*, 166 Wn.2d 1, 8, 201 P.3d 1011 (2009). Therefore, doubts as to the meaning of the IIA are resolved in favor of the injured worker. *McIndoe*, 144 Wn.2d at 257.

The IIA provides two types of classifications for a permanent disability: permanent partial disability and permanent total disability. Permanent *partial* disability involves a permanent injury or disease that does not prevent the worker from working. *See id.* Once DLI determines that the worker is permanently partially disabled, he or she is entitled to receive a specific amount as compensation, calculated under guidelines stated in RCW 51.32.080 and related administrative regulations. *Id.* PPD benefits are often referred to as "lump-sum" benefits because the benefit is a one-time award. *Stone v. Dep't of Labor & Indus.*, 172 Wn. App. 256, 262, 289 P.3d 720 (2012).

Permanent *total* disability involves certain specific injuries and an injury or disease that "permanently incapacita[tes] the worker from performing any work at any gainful occupation." RCW 51.08.160; *see also McIndoe*, 144 Wn.2d at 257. Once DLI determines that the worker is permanently and totally disabled, the worker is entitled to receive a monthly payment in an

amount based on a percentage of his or her wages. RCW 51.32.060; *Boeing Co. v. Doss*, 183 Wn.2d 54, 58, 347 P.3d 1083 (2015). PTD benefits are often referred to as "pension" benefits because the benefit represents a monthly wage replacement. *Stone*, 172 Wn. App. at 262.

A worker who receives a PPD award before being classified as permanently and totally disabled based on an unrelated injury is entitled to a full pension for the subsequent PTD, "notwithstanding the payment of a lump sum for his or her prior injury." RCW 51.32.060(4); *see also McIndoe*, 144 Wn.2d at 257-58. However, if the worker receives a PPD award for an injury and then is classified as permanently and totally disabled for the same injury, the amount of the PPD award is deducted from the PTD benefits. RCW 51.32.080(4).

C.      RECOVERY OF BOTH PPD AND PTD BENEFITS

In *Harrington*, the Supreme Court held that a worker who has been classified as permanently and totally disabled for an industrial injury and has been awarded a PTD pension cannot recover disability benefits for a second injury that occurred *after* being classified as permanently and totally disabled. 9 Wn.2d at 7-8. The court stated, "[h]aving been classified as permanently and totally disabled, [the worker] could not, in law, be further disabled." *Id.* at 7. The court further stated,

> [The worker] has already received all the benefits that may be allowed for permanent and total disability. A subsequent lesser disability cannot be superimposed upon the maximum disability recognized by the law. A contrary conclusion would result in an overlapping of classifications and in the allowance of double payment.

*Id.* at 8.

The Supreme Court acknowledged this rule in two cases decided shortly after *Harrington*. *See Peterson v. Dep't of Labor & Indus.*, 22 Wn.2d 647, 651-52, 157 P.2d 298 (1945); *Sorenson v. Dep't of Labor & Indus.*, 19 Wn.2d 571, 577-78, 143 P.2d 844 (1943). The

court also has confirmed the *Harrington* rule in more recent cases. *See McIndoe*, 144 Wn.2d at 259-60; *Clauson*, 130 Wn.2d at 585.

However, a worker can recover PPD benefits for an injury that occurred *before* he or she was classified as permanently and totally disabled because of a different injury, even if the PPD award had not yet been made at the time of the PTD classification. *McIndoe*, 144 Wn.2d at 266; *Clauson*, 130 Wn.2d at 586.

In *Clauson*, the worker injured his right hip in 1974 and injured his lower back and left hip in 1983. 130 Wn.2d at 582. DLI determined that the worker was permanently and totally disabled because of the 1983 back injury and awarded him a PTD pension. *Id.* Later, DLI determined that Clauson was permanently partially disabled because of the 1974 hip injury, but denied the worker PPD benefits because he already had been classified as permanently and totally disabled. *Id*. at 582-83. The Supreme Court held that Clauson was entitled to PPD benefits under the particular circumstances of that case. *Id*. at 586. The court distinguished *Harrington* because Clauson's injury resulting in the PPD occurred before the injury resulting in the PTD, the PPD was considered under a separate claim, and the PPD claim was pending at the time Clauson was classified as permanently and totally disabled. *Id*.

In *McIndoe*, three workers in consolidated cases suffered injuries for which they were classified as permanently and totally disabled, but also sought PPD awards for unrelated hearing loss that developed before the PTD classification. 144 Wn.2d at 254-56. The Supreme Court stated that unlike in *Harrington*, the workers were not seeking disability benefits for an injury suffered after they had been classified as permanently totally disabled. *Id.* at 259-60. Instead, the workers were seeking PPD awards for an occupational disease that occurred before their pension awards. *Id*. at 260. The court stated that "[a]s in *Clauson*, the workers in this case had

valid, preexisting, compensable claims for occupational disease suffered before their totally disabling injuries." *Id*. at 265. The court concluded:

> Based on the holding of *Clauson*, the principle that provisions of the IIA be liberally construed in favor of injured workers, and that workers should not be penalized for the sequencing of the filing of claims, we hold that a worker may receive permanent partial disability benefits for a valid occupational injury or disease claim that preexisted and is unrelated to the worker's permanent total disability condition if the permanent partial disability claim is filed within the statute of limitations.

*Id*. at 266.

In both *Clauson* and *McIndoe*, it was not material whether the date of DLI's decision and the effective date of the PTD were different; the injuries for which the workers were seeking a PPD award all occurred before the effective date of the PTD. Here, however, Sims's March 2012 injury occurred after the effective date of the PTD (September 24, 2010) but before the date of DLI's decision stating that Sims was permanently and totally disabled (September 11, 2012). The issue here is whether the relevant date for determining Sims's entitlement to PPD benefits for his March 2012 injury is the effective date on which he became permanently and totally disabled (2010) or the date of DLI's decision stating that he became permanently and totally disabled (2012).

D.      DATE OF DISABILITY VS. DATE OF DLI DECISION

Sims argues that *Clauson* and *McIndoe* control and he is entitled to a PPD award because the March 2012 injury occurred and his claim was pending before DLI's decision that he was permanently and totally disabled. DLI argues that the *Harrington* rule controls and Sims is not entitled to a PPD award because the March 2012 injury occurred after the effective date of Sims's PTD and receipt of pension benefits. We agree with DLI.

Sims's argument finds some support in the language of *McIndoe* and *Clauson.* Both cases focus on when the worker was "classified" as permanently and totally disabled. *McIndoe*,

144 Wn.2d at 260; *Clauson* 130 Wn.2d at 585. As in those cases, DLI had not classified Sims as permanently and totally disabled when his March 2012 injury occurred. However, neither *Clauson* nor *McIndoe* involved the situation here, where DLI's PTD decision stated that the date on which Sims had become permanently and totally disabled was approximately two years earlier.

Focusing on the effective date of the PTD rather than the date of DLI's PTD decision is consistent with the reasoning in *Harrington*. As the Board and DLI determined, Sims actually became permanently and totally disabled on September 24, 2010. Once he became totally disabled, he could not become further disabled by another injury. *Harrington*, 9 Wn.2d at 7.

Focusing on the effective date of the PTD also is consistent with the purpose of the rule that a permanently and totally disabled worker cannot receive a PPD award for a subsequent injury: to avoid double recovery. *Id.* at 8. DLI's decision stated that Sims was entitled to a pension retroactive to September 24, 2010. A pension is the maximum benefits allowed for a permanent total disability. *See id.* at 7. Giving Sims a PPD award in addition to maximum PTD benefits would result in double recovery.

Sims argues that as in *Clauson*, he is entitled to a PPD award because the claim for his March 2012 injury was pending when the Board and DLI determined that he was permanently and totally disabled effective September 24, 2010. However, the proper question is whether the claim for the March 2012 injury was pending at the time Sims *actually* became disabled, not when DLI made its decision. Sims's March 2012 claim was not pending on the effective date of his disability and pension.

Sims also argues that he is being penalized because of DLI's erroneous initial decision that he was only partially disabled because of his 2003 injury and that denying a PPD award for

the 2012 injury would be unfair. But Sims does not explain why denying him a PPD award would be unfair. If DLI had correctly decided in September 2010 that Sims was permanently and totally disabled, he would have begun receiving a pension at that time and there would be no question under *Harrington*, *Clauson* and *McIndoe* that he could not recover a PPD award for the 2012 injury. DLI's corrected decision established the same result retroactively.

Finally, Sims argues that if DLI actually had awarded him PPD benefits for the March 2012 injury before the Board's August 2012 ruling, he would be able to retain those benefits. Although we need not decide this issue, it is not clear that Sims would be able to retain the PPD benefits in this situation. Because under DLI's corrected decision Sims received a PTD pension effective September 24, 2010, a reasonable argument may be made that allowing him to retain a PPD award in this situation would result in double recovery.

We hold that because Sims became permanently and totally disabled as of September 24, 2010 and received pension benefits retroactive to that date, he cannot obtain PPD benefits for an injury that occurred after that date.

E.   ATTORNEY FEES

Sims requests an award of reasonable attorney fees pursuant to RCW 51.52.130. RCW 51.52.130(1) provides for an award of attorney fees to workers or beneficiaries when the superior court "decision and order is reversed or modified and additional relief is granted to a worker or beneficiary." Because we affirm the superior court's order, we do not award Sims attorney fees under RCW 51.52.130.

CONCLUSION

After the Board's decision on Sims's appeal, DLI determined that Sims was permanently and totally disabled as of September 24, 2010. Sims received a monthly wage-replacement

10

pension effective on that date. Sims's March 2012 injury occurred after he was permanently and totally disabled. Therefore, under settled law Sims was not entitled to a PPD award for the March 2012 injury. We affirm the superior court's order.

MAXA, J.

We concur:

BJORGEN, C.J.

LEE, J.