[Civ. No. 11849. Third Dist. Sept. 16, 1968.]

ISABELLE E. BRENNFLECK, Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD AND CONSOLIDATED FREIGHTWAYS CORPORATION OF DELAWARE, Respondents.

Neyhart, Grodin & Beeson and Edward C. Pinkus for Petitioner.

Everett A. Corten, Marcel Gunther, Mullen & Filippi and John A. Thompson for Respondents.

PIERCE, P. J.—The Workmen's Compensation Appeals Board granted reconsideration of a referee's recommendation and thereafter issued an order denying death benefits to petitioner, an allegedly dependent widow of Carl Brennfleck. Petitioner seeks annulment of said order.

The petition raises two contentions. The first contention is that the appeals board was without power to grant the employer's petition for reconsideration. We disallow that contention, but we have concluded that petitioner's second point has merit and that the decision must be annulled for failure of the appeals board to state the evidence relied upon and to detail the reasons for its action as required by section 5908.5 of the Labor Code.[1]

---

[1]Section 5908.5 provides in material part: ''Any decision of the appeals board granting or denying a petition for reconsideration or affirming, rescinding, altering, or amending the original findings, order, decision, or award following reconsideration shall be made by the appeals board and not by a referee and shall be in writing . . . and shall state the evidence relied upon *and specify in detail the reasons for the decision.*'' (Italics ours.)

We state the facts in the chronology of the steps taken:

*January 3, 1967.* Petitioner, signing as ''Isabelle E. Brennfleck,'' filed an application for death benefits arising from the death of Carl Brennfleck, alleging his death on November 1, 1966, from injuries arising out of and in the course of employment by Consolidated Freightways Incorporated, a self-insured employer (''Consolidated''). A printed state form of application was used. The blanks of the form were typewritten in by applicant's attorney. In item 7, the space for ''dependents,'' the names of three sons were inserted. Through inadvertence applicant's name as widow was not included. She signed, however, as ''applicant.''

*January 31, 1967.* Consolidated's answer was filed. ''Dependency and identity of dependents'' were the stated defenses. The death of Carl arising from his employment was not, and is not, contested.

*March 8, 1967.* A hearing was held before a referee. Petitioner's attorney put on perfunctory proof of her marriage and dependency, as well as the dependency of the children. There was no cross-examination; no apparent contest of any issue. (Inclusion of a son of petitioner by a previous marriage as a dependent was the subject of most of the questioning. It was shown he had been taken into the home and accepted as a son by Carl.)

*March 10, 1967.* The referee made his award. It too was perfunctory. It awarded $20,500 as death benefits of which $3,000 was to petitioner as a dependent widow. The balance was to all the children as dependents. The funeral bill was allowed.

*March 30, 1967.* Consolidated filed a petition for reconsideration. It claimed to have been taken by surprise at the finding in favor of petitioner as a dependent since she had not claimed to be a dependent in the application. It surmised the referee must have so found ''by oversight.'' The petition averred: ''Defendant certainly had the right to rely on the pleadings.'' Consolidated also alleged ''that by virtue of certain documents in its possession'' the fact was that petitioner and Carl ''were never *validly* united in marriage and consequently . . . [petitioner] was not and could not have been . . . a dependent.'' (Italics ours.) The prayer was for a reduction of the award to $17,500 plus burial expense. Consolidated acknowledged that if petitioner could show herself to be a widow or a dependent she should have a right to prove her

case but that as matters stood Consolidated was being deprived of its property without due process.[2]

*April 6, 1967.* Petitioner filed her answer to Consolidated's petition for reconsideration. This answer stated the mistake in pleading (i.e., the failure to name petitioner as a dependent) was "a technical defect of the kind which courts regularly excuse." As we have done in the foregoing chronology, her answer pointed out that proof of marriage and dependency had been put on without challenge. It also alleged the undisputable fact that Consolidated had had all the statistical data regarding the marriages and divorces since November 1966. Accompanying this answer was a petition for leave to file an amendment to the application to include petitioner as a dependent *nunc pro tunc.*

*April 11, 1967.* The referee filed his report and recommendation on the petition for reconsideratioin. He stated he viewed the pleading omission as inadvertent and without prejudice to Consolidated. Regarding the latter's attack on the validity of the marriage, he said: "I can't help but feel [it] is desultory and of no avail." It was recommended that the petition by Consolidated be denied.

*April 28, 1967.* The appeals board ordered a 30-day extension of the time within which it could act on the petition. (Lab. Code, § 5909.)

*May 22, 1967.* Reconsideration was granted by the appeals board. Another hearing was ordered.

*August 3, 1967.* The hearing was held before another referee. There were only two witnesses, both produced by petitioner. Petitioner herself testified. We summarize her testimony. She related again her marriage to Carl in Nogales, Mexico. The marriage had been preceded by the following events: Carl and his former wife had separated. The wife had obtained a "consent" divorce in March 1960 in San Joaquin County, California. After the interlocutory decree of divorce Carl had asked petitioner to marry him. He had consulted a lawyer friend in Stockton. It is implicit in petitioner's testimony that it was upon the basis of advice received that she consented to a marriage in Mexico. Carl and petitioner went

---

[2]We must characterize Consolidated's claim of surprise as unfounded. As early as November 1966 Consolidated's attorneys had had full knowledge of the fact that petitioner was claiming as a dependent widow and of all the facts surrounding the marriage of Carl to petitioner, including the documents which Consolidated in its petition used as the basis for alleging the marriage to be invalid. *Copies of these documents had been furnished to it on November 29, 1966, by petitioner's attorney.*

to Nogales, Mexico, together. There on April 12, 1960, they met a lawyer, Espinosa, whom they told about the California decree. They were advised by the Mexican lawyer that under the laws of the State of Sonora (in which Nogales is located) they could be legally married, in fact that they could have been married the day following Carl's divorce. On April 14, 1960, they were married in Nogales. A marriage certificate was produced at the hearing. The couple spent 15 days in Mexico on a honeymoon. They had lived as man and wife ever since.

During those seven years, in addition to living as Mr. and Mrs. Brennfleck, they had, as man and wife, bought real property together. They had had two children and Carl had accepted petitioner's child by her previous marriage into his family as his own. The child had taken the name Brennfleck, had been baptized as such, and at the time of Brennfleck's injury formal adoption proceedings were pending.[3] Insurance listing the petitioner, his "wife," as beneficiary was taken out by Carl. They had filed joint income tax returns. The couple had attended parent teachers' meetings together, and Joe Brennfleck, the only other witness who testified at the hearing, averred that all the friends and acquaintances of the Brennflecks had known of them as husband and wife. Petitioner had paid Carl's funeral expenses. There was no testimony produced by Consolidated to show that petitioner did not in good faith believe her marriage to Carl to be valid.

Consolidated did offer the documentary proof referred to in its petition for reconsideration. It showed the Nogales marriage had taken place less than a month after the interlocutory decree obtained by Carl's former wife in San Joaquin County. It also showed that Carl had obtained a Mexican divorce in Chihuahua, Mexico, in August 1960. A final decree had been entered in the San Joaquin County divorce in July 1964.

### The Appeals Board Had Power to Grant Consolidated's Petition for Reconsideration

At the time of the referee's original findings the application had not pleaded that petitioner was either a widow or a dependent of Carl. Those facts had been proved (prima facie) but not pleaded. The pleading deficiency had been inadver-

---

[3] The failure to have concluded the adoption proceedings was explained. The son considered Carl to be his natural father. They were told that in the hearing of the adoption proceedings the son would learn Carl was an adopting stepfather. They thought this knowledge should be withheld until the child was older.

tent. The employer knew it was inadvertent. That is proved by the correspondence between opposing counsel. Stated bluntly, on the one hand petitioner's attorney had drawn the application carelessly, and on the other hand Consolidated, knowing of the mistake, had been playing "cat and mouse" in a move aptly characterized by the referee as "dilatory," although it was somewhat purposeless.

If workmen's compensation proceedings were altogether adversary in nature, it might be proper to weigh the one fault against the other to determine whether a penalty should be imposed and, if so, against whom. Traditionally and historically, however, the adversary aspects of proceedings before the board are muted, and properly so if the constitutional aims of workmen's compensation (Cal. Const., art. XX, § 21) are to be achieved. That aim, applied to this proceeding is to determine the issue: Is petitioner a person entitled under the pertinent Labor Code section (§ 3503, see fn. 5) to receive death benefits? That aim will not be accomplished here by playing games because of pleading defects.

 Petitioner's entitlement to benefits, however, could only be determined after a hearing with all proper issues properly joined. Petitioner cites no authority for her contention to the contrary. We hold that the appeals board properly granted the employer's petition for reconsideration. (Lab. Code, § 5903, subd. (c).)

### THE APPEALS BOARD FAILED TO MAKE APPROPRIATE FINDINGS ON THE QUESTION OF WHETHER PETITIONER WAS A PUTATIVE WIFE

The issue after the documentary proof had been introduced showing that a couple domiciled in California had shortcut the interlocutory waiting period after a California divorce by a Mexican marriage was not whether the marriage was *actually* legal. We may assume that it was not.[4] (Civ. Code, § 61, subd. 1; Civ. Code, § 132.) The question then became: Was there a putative marriage. A putative spouse is one who believes in good faith that she is a party to a valid marriage though the marriage is invalid. (2 Witkin, Summary of Cal. Law (1960) Workmen's Compensation, § 97, p. 1736, and cases cited.) Such a spouse is entitled to a defendant's benefits under workmen's compensation laws. (*Temescal Rock*

---

[4]The record reflects no evidence whatever that Carl's former wife was alive at any time after the entry of the interlocutory decree in San Joaquin County in March 1960. (See *Estate of Long*, 198 Cal.App.2d 732, 739-740 [18 P.2d 105].)

*Co.* v. *Industrial Acc. Com.*, 180 Cal. 637, 640-641 [182 P. 447, 13 A.L.R. 683] ; 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (1967) § 15.02 (4) (d) ; Lab. Code, § 3503.)[5]

The appeals board made a finding "Isabelle E. Brennfleck was not a dependent of the deceased Carl Brennfleck, nor was she his widow." That is not a finding on the issue of petitioner's status which complies with the requirements of Labor Code section 5908.5. (See fn. 1.) The purpose of that section is to assist the reviewing court to ascertain the principles relied upon by the appeals board to help that tribunal avoid careless or arbitrary action, and to make the right of appeal or of seeking review more meaningful (*Evans* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 753 [68 Cal.Rptr. 825, 441 P.2d 633].) Here, as in *Evans,* the appeals board did not detail the evidence it relied upon and the reasons for its decision. The term "putative spouse" is not mentioned. The bona fides of petitioner's assertion of the fact that she was the wife of Carl is not determined. There is nothing in its ultimate order to indicate that the appeals board has any clear understanding of what a putative spouse is. There is much to indicate it did not understand the nature and legal effect of that relationship.[6]

We have outlined above the evidence in the record. There is uncontradicted proof—all of it substantial—to indicate that petitioner in good faith believed she was legally married to Carl and that Carl joined in that belief. We need not repeat that summary of evidence. Consolidated argues that from the fact petitioner had been twice divorced before it must be inferred she knew that she could not marry Carl until his interlocutory period had elapsed. *Non constat.* Reasonably ap-

[5]Labor Code section 3503 reads as follows: "No person is a dependent of any deceased employee unless in good faith a member of the family or household of the employee, or unless the person bears to the employee the relation of husband or wife, child, posthumous child, adopted child or stepchild, father or mother, father-in-law or mother-in-law, grandfather or grandmother, brother or sister, uncle or aunt, brother-in law or sister-in-law, nephew or niece.''

[6]The findings here are similar to those in *Louden* v. *Industrial Acc. Com.* (1930) 105 Cal.App. 65 [286 P. 1045], which this court held to be inadequate in that they did not comply with subdivision ''C'' of the Workmen's Compensation Act of 1917 (now embodied in Lab. Code, § 3503). In the opinion in *Louden* we said (on p. 69 of 105 Cal.App.): ''If the question of wifehood only had been involved . . . then the finding of the Commission that the petitioner . . . was not the wife of the employee at the date of his death would be determinative of this case, but as the issue of good faith also was involved [under the provision of the act cited], the petitioner was entitled to a definite finding upon that fact.''

praised, that experience would perhaps have told her she and Carl could not marry in *California*. It does not follow that she would realize they could not legally marry in Mexico. (see *Knoll* v. *Knoll* (1918) 104 Wash. 110 [176 P. 22, 11 A.L.R. 1391].) The advice of two lawyers had been sought. The advice of at least one was followed. We are not compelled to wear judicial blinders and ignore the frequency of excursions by California domiciliaries across the borders of the state, both easterly and southerly, to avoid the waiting period of an interlocutory decree and to "legalize" remarriage. Obviously, all of these couples do not incur this considerable expense with knowledge it is being incurred uselessly and to accomplish a nullity. In fact, sometimes (and under circumstances not necessary to be related here) such excursions do result in valid remarriage.

Later in 1960 a second divorce from Carl's former wife was obtained. That divorce decree was entered in the State of Chihuahua, Mexico. We assume it was not obtained without expense. Why was it obtained if not in the belief by the couple that if the Nogales, Mexico, marriage of a few months before was in any way tainted, the Chihuahua divorce legitimatized it?

■ Consolidated argues (without cited authority) that the presumption is against good faith when a putative marriage is at issue. There is authority to the contrary. On the record before us we find *Krizman* v. *Industrial Acc. Com.* (1936) 14 Cal.App.2d 419 [58 P.2d 405], possesses some similarities to the case at bench. There a wedding party took a trip to Reno. The petitioner bride (and no doubt the rest of the party) became intoxicated. "The petitioner was not clear where they went, nor what they did, but she thought . . . that they were married by a justice of the peace—but she was not certain." (Page 421.) The couple had lived as husband and wife for many years until the "husband's" work-induced death. The board denied petitioner's claim. The following quotation from the reviewing court's opinion (at page 422) is apposite: "Something is said about 'good faith.' We are unable to ascertain why. Every incident above recited goes to show 'good faith' and to disprove 'bad faith.' He who would assert 'bad faith' should be able to point to some evidence proving or tending to prove 'bad faith.' "

It would be inappropriate in the proceeding being reviewed here to leave an impression that the matter is being remanded solely for repair of incomplete findings. Nothing said herein is

intended either to preclude or require an order by the appeals board directing a further hearing so that additional exploration into the good faith belief by petitioner as to the validity of her marriage can be had.

The decision after reconsideration is annulled insofar as it denies a death benefit to petitioner individually, and the matter is remanded for further action not inconsistent with this opinion. In all other respects the award is affirmed.

Friedman, J., and Bray, J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.