IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ALONSO VELIZ, | ) | |
| | ) | No. 33303-5-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF LABOR AND | ) | UNPUBLISHED OPINION |
| INDUSTRIES, | ) | |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, J. — Alonso Veliz appeals decisions affirming a Department of Labor and Industries' change to what had been a final order establishing his wage for industrial insurance compensation purposes. The wage was based on Mr. Veliz's reported status, as of the date of injury, as married with three children. When Mr. Veliz was required to provide further documentation in support of a pension, it was determined that while he viewed himself as married, he was not legally married. The corrected "single" status reduced his benefits.

After Mr. Veliz appealed to this court, our Supreme Court held in *Birrueta v. Department of Labor & Industries*, 186 Wn.2d 537, 379 P.3d 120 (2016) that the Department is authorized by statute to correct final orders that prove to be erroneous for a

reason identified in RCW 51.32.240(1)(a), one being reliance on an "innocent misrepresentation by or on behalf of the recipient." Because Mr. Veliz's situation is materially indistinguishable from the position of the benefit recipient in *Birrueta*, we affirm.

## BRIEF FACTS AND ANALYSIS

In 2015, this court issued its decision in *Birrueta v. Department of Labor & Industries*, 188 Wn. App. 831, 355 P.3d 320, *rev'd*, 186 Wn.2d 537, 379 P.3d 120 (2016), in which we addressed RCW 51.32.240(1), dealing with when the Department may require repayment of benefits by a recipient.

Subsection (1)(a) allows the Department to recover overpayments of benefits on account of, among other errors, "innocent misrepresentation by or on behalf of the recipient thereof mistakenly acted upon," but only if a claim for repayment is made within a year. Subsection (1)(b) generally precludes the Department from assessing an overpayment of benefits because of "adjudicator error" unless the order on which the overpayment is based is not yet final.

Mr. Birrueta's marital status had been innocently misrepresented to the Department as a result of a miscommunication between the Spanish-speaking Mr. Birrueta and the person who filled out the English language industrial accident report on his behalf. *Birrueta*, 188 Wn. App. at 833-34. The form identified Mr. Birrueta's sister, with whom he lived, as his wife; it identified her daughter, also a member of the

2

household, as his child. *Id.* at 834. Because of his reported marital status, he received larger time-loss payments than he would have if single. *Id.* The mistake came to light when Mr. Birrueta was later found totally and permanently disabled, was placed on a pension, and was required to provide further information about his marital status at the time of the injury. *Id.* at 835.

Reading RCW 51.32.240(1) in conjunction with other provisions of chapter 51.32 RCW, we did not construe the terms "innocent misrepresentation" and "adjudicator error" as mutually exclusive. We held that "adjudicator error" was meant to address final orders, including where the adjudicator's error in a final order was based on a worker's "innocent misrepresentation." Because Mr. Birrueta's wage for compensation purposes and his underlying marital status was the subject of a final order, we held that the Department's right to recover overpayments in the prior year resulting from innocent misrepresentations did not apply.

Our Supreme Court granted the Department's petition for review of our decision and reversed, agreeing with the Department's construction of RCW 51.32.240(1)(a) and (b). The stay that had been entered in this appeal pending the Supreme Court's decision in *Birrueta* was lifted.

Like Mr. Birrueta, Mr. Veliz is a monolingual Spanish speaker and his industrial accident report was completed by someone else. His accident report also represented that he was married, in his case with three children, and a final order fixed his wage for

3

compensation purposes based on that information. He, too, was later adjudicated fully and permanently disabled and it was in that connection that the Department learned that he was not legally married.

In supplemental briefing filed in this appeal after the Supreme Court's *Birrueta* decision, Mr. Veliz argues that his case is distinguishable from Mr. Birrueta's for two reasons. First, Mr. Veliz claims that based on cultural mores in his and his wife's native Mexico, they believed they were married and held themselves out as married. For that reason, Mr. Veliz takes the position that in completing Department paperwork at the time of his injury, "he answered truthfully." Appellant's Suppl. Br. at 5.

Entitlement to the pension benefit Mr. Veliz wants to retain requires that he was "married" with three children at the time of injury. RCW 51.32.060(1)(d). "Married" is not defined for purposes of Title 51. *See* chapter 51.08 RCW. "Marriage" in Washington is governed by chapter 26.04 RCW. To be married in this state, a couple must procure a license from a county auditor and have the marriage solemnized within a prescribed period of time. RCW 26.04.140, .180. The person solemnizing the ceremony is required to file a certificate with the county auditor. RCW 26.04.090. A marriage between two persons that is recognized as valid in another jurisdiction is valid in Washington, subject to limited restrictions. RCW 26.04.020(4). In Mr. Veliz's case, the Board of Industrial Insurance Appeals made an unchallenged finding that when he completed paperwork for

4

a pension, Mr. Veliz admitted he was not married at the time of his injury.[1] Although the Board found that Mr. Veliz had lived with his wife since 1998, it made the unchallenged finding that they did not have a formal marriage ceremony until January 2011.

To "misrepresent" has been defined as "to make an assertion or give an impression not in accord with the facts." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1445 (1993). Black's defines it, in part, as "an incorrect, unfair, or false statement; an assertion that does not accord with the facts." BLACK'S LAW DICTIONARY 1152 (10th ed. 2014). The definitions include no subjective component. In an action for fraud or negligent misrepresentation, the falsity of a representation is an element distinct from the speaker's state of mind. *See* 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL §§ 160.01, 165.01 (6th ed. 2013). Mr. Veliz's initial report that he was married was a misrepresentation. Because it was innocent, it was covered by RCW 51.32.240(1)(a).

Mr. Veliz's second argument is that the error in his case resulted from the adjudicator's "failure to secure adequate information," which is an explicit example of "adjudicator error" identified by RCW 51.32.240(1)(b). According to Mr. Veliz, the

---

[1] The Board was not presented, nor are we, with evidence and argument that Mr. Veliz's marriage was valid where contracted and consummated and is therefore valid in Washington—an argument that an injured worker would be free to make in light of RCW 26.04.020(3). *In re Marriage of Akon*, 160 Wn. App. 48, 56-57, 248 P.3d 94 (2011). A claim based on the marriage's validity where contracted and consummated would require proof of foreign law. *Id.*

5

Department should secure proof of marriage when an injured worker initially files a claim rather than waiting until a pension is ordered.

The same argument was made in Mr. Birrueta's appellate brief in this court and in his supplemental briefing to the Supreme Court, both of which would have been considered by the high court in rendering its *Birrueta* decision. *See* Br. of Resp't, *Birrueta v. Dep't of Labor & Indus.*, No. 32210-6-III (Wash. Ct. App. July 10, 2014)[2] at 13-14; Resp't's Br., *Birrueta v. Dep't of Labor & Indus.*, No. 92215-2 (Wash. Mar. 11, 2016)[3] at 14-15.

The *Birrueta* court held that the three types of error explicitly identified as "adjudicator error" in RCW 51.32.240(1)(b) are the types of errors "typically addressed on reconsideration or direct appeal." 186 Wn.2d at 546. It held that an adjudicator's "'failure to secure adequate information'" was equivalent to an adjudicator decision supported by "insufficien[t] evidence." *Id.* Mr. Veliz, like Mr. Birrueta before him, asks us to make a normative judgment about how much information the Department should collect before entering an order. But *Birrueta* tells us that the statutory language asks only whether substantial evidence supports an adjudicator's order. Mr. Veliz's

---

[2] http://www.courts.wa.gov/content/Briefs/A03/322106%20Respondent.pdf [https://perma.cc/HY46-HUJK].

[3] http://www.courts.wa.gov/content/Briefs/A08/92215-2%20Supp%20Brief%20-%20Resp.pdf [https://perma.cc/Y36C-2A6C].

No. 33303-5-III
*Veliz v. Dep't of Labor & Indus.*

representation in his industrial accident report that he was married was substantial evidence. The adjudicator did not err.

Because Mr. Veliz has not established a right to relief, he is not entitled to an award of attorney fees on appeal. See RAP 18.1; RCW 51.52.130(1).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

I CONCUR:

_____
Pennell, J.

7

No. 33303-5-III

FEARING, C.J. (dissenting) — I dissent. Because RCW 51.32.060(1)(d) does not

define "marriage," I would hold that a worker, who reasonably considers himself

married, to be married under the workers compensation statute such as to afford marriage

benefits for disability. Therefore, this court should not entitle the Department of Labor &

Industries (DLI) to reduce benefits or seek recoupment of benefits on the basis of a

misrepresentation by Alonso Veliz.

Alonso Veliz was born in Mexico. Veliz does not read, write, or speak English.

We do not know when he entered the United States. While still residing in Mexico in

1998, Veliz began cohabiting with Marisol Vallarta Martinez. Since 1998, the pair have

lived as husband and wife and represented themselves, in both Mexico and the United

States, to be married. At the time of Veliz's injury, the couple had three children.

Due to Mexican cultural norms, Alonso Veliz deems himself married to Marisol

Vallarta Martinez. Vallarta deems herself married to Veliz. This method of marrying is

common in Mexico where some couples cannot afford to marry and some individuals do

not consider a "piece of paper" to hold any significance in regard to marriage. Report of

Proceedings at 49.

In 2007, Alonso Veliz suffered a knee injury while working in the warehouse of Pasco's 3 Rivers Potato Services. Pasco's Lourdes Medical Center treated Veliz for his injuries. During Veliz's visit to the hospital, someone completed patient information for him on a DLI workers compensation claim form probably available through the hospital. Veliz experienced intense pain, while in the hospital, due to his injuries. Veliz encountered difficulty answering questions on the form. Whomever completed the form marked that Veliz was married.

In January 2008, DLI issued a notice of decision announcing its determination of Alonso Veliz's wage for workers compensation purposes. The notice read that DLI treated his marital status eligibility as "married with 3 children." Clerk's Papers at 117. DLI paid time-loss benefits to Alonso Veliz calculated as if Veliz was married, which resulted in larger payments than he would have garnered as a single individual.

On January 25, 2011, Alonso Veliz and Marisol Vallarta Martinez legally married in Pasco. The couple married at the advice of their lawyer.

In 2011, DLI adjudged Alonso Veliz to be permanently and totally disabled and ordered him placed on a pension beginning October 7, 2009. When completing pension paperwork, Veliz informed DLI that he was not legally married at the time of his work injury. In light of this new information, DLI, on August 8, 2011, issued an order changing Veliz's marital status for compensation purposes from married to single.

2

RCW 51.32.060 controls, in part, the amount of payment that DLI pays an injured worker who suffers a permanent total disability. The statute read in relevant part:

> (1) When the supervisor of industrial insurance shall determine that permanent total disability results from the injury, the worker shall receive monthly during the period of such disability:
> (a) If married at the time of injury, sixty-five percent of his or her wages.
> (b) If married with one child at the time of injury, sixty-seven percent of his or her wages.
> (c) If married with two children at the time of injury, sixty-nine percent of his or her wages.
> (d) *If married with three children at the time of injury*, seventy-one percent of his or her wages.
> (e) If married with four children at the time of injury, seventy-three percent of his or her wages.
> (f) If married with five or more children at the time of injury, seventy-five percent of his or her wages.
> (g) *If unmarried at the time of the injury, sixty percent of his or her wages.*
> . . . .

RCW 51.32.060(1)(a)-(g) (emphasis added). Chapter 51.08 RCW contains numerous definitions, but none for "marriage" or "married."

Ultimately, in resolving a question of statutory construction, this court will adopt the interpretation which best advances the legislative purpose. *Citizens Alliance for Property Rights Legal Fund v. San Juan County*, 184 Wn.2d 428, 437, 359 P.3d 753 (2015). RCW 51.32.060's increase in benefits for a married person permits a worker who maintains a family to afford to care for the family. That purpose applies to the relationship between Alonso Veliz and Marisol Vallarta Martinez.

3

As noted by the majority, the Washington Legislature requires a solemnized "civil contract" in order for a marriage to be valid. RCW 26.04.010(1), .050, .120, .130; *In re Marriage of Pennington*, 142 Wn.2d 592, 599-600, 14 P.3d 764 (2000); *Roe v. Ludtke Trucking, Inc.*, 46 Wn. App. 816, 819, 732 P.2d 1021 (1987). Common law marriage is not recognized under Washington law. *In re Marriage of Pennington*, 142 Wn.2d at 600; *Peffley-Warner v. Bowen*, 113 Wn.2d 243, 249, 778 P.2d 1022 (1989). Nevertheless, a common law marriage valid in the state where contracted and consummated is recognized as a valid marriage in this state. *Peffley-Warner v. Bowen*, 113 Wn.2d at 249; *In re Welfare of Warren*, 40 Wn.2d 342, 344, 243 P.2d 632 (1952). A common law marriage is one without formal solemnization. *Peffley-Warner v. Bowen*, 113 Wn.2d at 249. Such a marriage arises based on an actual and mutual agreement to enter into a matrimonial relation, between parties capable in law of making such a contract, consummated by their assumption openly of marital duties and obligations. *Peffley-Warner v. Bowen*, 113 Wn.2d at 249-50.

DLI fails to recognize that Alonso Veliz and Marisol Vallarta Martinez cohabitated, treated each other as spouses, held themselves out as married, and bore children as if married in Mexico. I recognize that, in litigation, a party asking the court to apply foreign law bears the burden to present the foreign law to the court. Nevertheless, since Washington recognizes common law marriages first established in another state, DLI should have, before revoking Veliz's marital benefit, investigated whether Veliz and

4

Vallarta would be considered married under the law of the Mexican state where the couple cohabited.

Actually, Mexican jurisdictions do not speak in terms of common law wives or common law marriage. Mexico is a code nation and does not recognize the common law. Instead, many Mexican jurisdictions acknowledge Mexican couples that live as husband and wife as being in a concubinage relationship that creates rights similar to rights attended to marriage. Jorge A. Vargas, *Concubines under Mexican Law; with a Comparative Overview of Canada, France, Germany, England and Spain*, 12 Sw. J.L. & TRADE AM. 45, 48 (2005). DLI's legal position fails to respect Mexico's culture, despite thousands of eastern Washington residents being of Mexican descent. Although not all Hispanics are of Mexican origin, Veliz's home town is predominantly Hispanic.

Wholly unrelated to either common law or state licensed marriage, Washington courts have recognized the existence of meretricious relationships now known as committed intimate relationships. *In re Marriage of Pennington*, 142 Wn.2d at 600; *Connell v. Francisco*, 127 Wn.2d 339, 346, 898 P.2d 831 (1995). The State Supreme Court characterizes a committed intimate relationship as a "stable, marital-like relationship where both parties cohabit with knowledge that a lawful marriage between them does not exist." *Connell v. Francisco*, 127 Wn.2d at 346. A court examines five relevant factors when reviewing whether a committed intimate relationship exists: continuous cohabitation, duration of the relationship, purpose of the relationship, pooling

5

of resources and services for joint projects, and the intent of the parties. *Connell v. Francisco*, 127 Wn.2d at 346; *In re Marriage of Lindsey*, 101 Wn.2d 299, 304-05, 678 P.2d 328 (1984). A relationship need not be "long-term" to be characterized as a committed intimate relationship. *In re Marriage of Lindsey*, 101 Wn.2d at 304-05.

Although a "committed intimate relationship" is not the same as a "marriage," the courts treat the parties' property similarly to the treatment of property owned by spouses. *In re Marriage of Pennington*, 142 Wn.2d at 601; *Connell v. Francisco*, 127 Wn.2d at 349. Upon the ending of the relationship, the court shall order a just and equitable distribution of property. *In re Marriage of Lindsey*, 101 Wn.2d at 304. If a court can impose marital property rules upon the ending of a committed intimate relationship when the parties know themselves not to be married, the court should consider a couple who judges themselves husband and wife and treat each other as husband and wife to be in a marital relationship for purposes of workers compensation benefits.

A decision of limited precedence is *Knoll v. Knoll*, 104 Wash. 110, 176 P. 22 (1918). Frances Knoll sought a divorce from Henry Coles. She appeared in court, on April 17, 1899, and the trial court orally granted a marital dissolution. Nevertheless, the court did not sign the divorce decree until October 8, 1906. In the meantime, Frances Knoll, on June 14, 1899, married Joseph Knoll in Canada. The parties could not marry in Washington State, because Washington prohibited a divorcee from remarrying within six months of the divorce. Canada lacked this proscription. Frances Knoll believed she

6

could marry in Canada because she was unaware of the trial court's failure to sign a divorce decree. The Supreme Court held that the marriage, celebrated in Canada, was void in Washington. Nevertheless, the court held that the lower court may, in an action brought for annulment of the marriage, treat the relation as a partnership as to all property acquired by the joint effort of the parties. A broad reading of *Knoll* suggests that a nonexistent legal marriage may be treated as a marriage when the parties in good faith believe themselves to be betrothed.

At the least, I would remand this appeal to DLI to conduct a hearing as to whether Alonso Veliz and Marisol Vallarta Martinez cohabited in a Mexican state that recognized concubinage. But a remand is not needed because of Veliz's unchallenged good faith belief of his marital status.

At least one foreign decision supports DLI's position that the department need not pay marital benefits unless the injured party is married in conformance with Washington law. *Ranney v. Whitewater Engineering*, 122 P.3d 214 (Alaska 2005). Nevertheless, numerous foreign cases support my dissent. *Spitz v. T.O. Haas Tire Co.*, 283 Neb. 811, 815 N.W.2d 524 (2012); *In re Death of Hyde*, 2011 OK 31, 255 P.3d 411; *West v. Barton-Malow Co.*, 394 Mich. 334, 230 N.W.2d 545 (1975); *Brennfleck v. Workmen's Compensation Appeals Board*, 265 Cal. App. 2d 738, 71 Cal. Rptr. 525 (1968); *Jackson v. State Compensation Commissioner*, 106 W. Va. 374, 145 S.E. 753 (1928). All the decisions involve death benefits but still determine whether a common law wife or a wife

7

in a committed intimate relationship with the decedent may recover marital workers compensation benefits.

*Brennfleck v. Workmen's Compensation Appeals Board*, 265 Cal. App. 2d 738, 71 Cal. Rptr. 525 (1968), contains a factual situation similar to *Knoll v. Knoll*. Isabelle Brennfleck journeyed to Mexico to marry Carl Brennfleck. Both were California residents. Carl's former wife had recently obtained an interlocutory divorce decree in California, but the dissolution court failed to enter the final decree until four years after the Mexican marriage ceremony. Carl died two years after entry of the final decree from a work accident. Isabelle sought workers compensation death benefits as the surviving spouse of Carl. Carl and Isabelle had lived together as husband and wife for seven years. The California appeals court reversed the compensation board's denial of benefits and directed the board to either grant Isabelle benefits or conduct a factual hearing into the good faith belief of Isabelle as to the validity of her marriage.

In *In re Death of Hyde*, 2011 OK 31, 255 P.3d 411, Oklahoma law required a surviving spouse to be legally married to the worker at the time of the worker's death in order for the spouse to garner death benefits. The court held that a common law wife was entitled to benefits.

In *Jackson v. State Compensation Commissioner*, 106 W. Va. 374, 145 S.E. 753 (1928), Allen Jackson and Margaret Lemon were married in Alabama in 1917. In 1924, Lemon left Jackson and instituted a divorce action. The couple later reconciled and

8

reassumed a marital liaison, but the Alabama court entered a divorce decree nonetheless. Lemon claimed no knowledge of the entry of the decree. In 1927, the couple moved to West Virginia. Shortly thereafter, Jackson died from an industrial accident. The state compensation commissioner denied Lemon any death benefits, in part, because West Virginia did not recognize common law marriage. The state Supreme Court reversed and remanded with directions for the commissioner to investigate whether Alabama would have recognized the couple as married under common law.

In *Spitz v. T.O. Haas Tire Co.*, 283 Neb. 811, 815 N.W.2d 524 (2012), the Nebraska high court denied Christy Spitz death benefits under Nebraska's workers compensation law. Spitz contended that she and the decedent engaged in a common law marriage. Nebraska rejected common law marriage, but Colorado, where the couple previously cohabitated, recognized this form of marriage. The Nebraska court may have granted Spitz benefits if she established that she lived with the decedent in common law marriage under Colorado law, but Spitz failed to establish the elements of a common law marriage.

*West v. Barton-Malow Co.*, 394 Mich. 334, 230 N.W.2d 545 (1975), presents the strongest support for this dissent. The Michigan workers compensation law did not afford death benefits to one unless the survivor was dependent and in a family relationship with the decedent. A family member included a "widow." Former MICH. STAT. ANN. § 17.237(331) (1969). Clarence and Azalee West lived together as husband

9

and wife for thirteen years before Clarence's death as a result of a work injury. Clarence garnered the only income, while Azalee cared for the household. The couple never wed. The Michigan Supreme Court granted Azalee death benefits. The court recognized the malleable concept of family. The court desired a couple who lived as husband and wife to be treated as husband and wife under the law.

_Fearing, J._

Fearing, C.J.

10